*Decision will be entered under Rule 50.*

RICHARD RUBIN AND HELENE RUBIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2075-66. Filed August 23, 1971.

*Martin D. Ginsburg,* and *Martin Amdur,* for the petitioners.
*James Q. Smith,* for the respondent.

#### OPINION

FAY, *Judge:* This case is presently before us on remand from the Second Circuit Court of Appeals, *Rubin v. Commissioner,* 429 F.2d 650 (1970), reversing and remanding 51 T.C. 251 (1968). The stipulated facts, as well as facts based upon the testimony and documentary

---

evidence received at trial, were set forth in detail in our prior opinion. Those findings were not disturbed on appeal nor did the parties offer any further facts during the additional argument heard on the issue to be decided herein. We will not, therefore, again set forth any of the facts previously found.

In the prior opinion of this Court we held that fees paid to a corporation for management services rendered by a controlling shareholder to a second corporation, controlled by the same shareholder, were taxable to the shareholder rather than to the corporation under section 61[1] and principles enunciated in *Lucas* v. *Earl*, 281 U.S. 111 (1930), despite the existence of a contract purporting to attribute the earnings to the corporation. In light of this conclusion, we did not reach respondent's attempted allocation of a portion of the income received by the corporation to petitioner under the authority of section 482.

The Court of Appeals held our reliance on section 61 to have been erroneous and remanded the case for consideration under section 482. In doing so, it found the case at bar to be indistinguishable from cases exemplified by *Fointaine Fox*, 37 B.T.A. 271 (1938), which refused to sustain the Commissioner's efforts grounded on *Lucas* v. *Earl* to tax an employee-shareholder on fees paid to his controlled corporation under a loaned employee arrangement comparable to that of the instant case. Although basing its conclusions predominantly on the apparent availability of section 482, the court expressly refrained from concluding that such is in fact the case, leaving that question to be decided by this Court on remand. In accordance with this mandate, we now face the alternative argument of respondent founded on the provisions of section 482.

Section 482 provides that when two or more organizations, trades, or businesses, whether or not incorporated, are owned or controlled by the same interests, the Commissioner is authorized to apportion gross income between or among such organizations, trades, or businesses if he deems that apportionment necessary clearly to reflect income or to prevent evasion of tax.[2] Petitioner opposes the attempted allocation under this section on several grounds, all but one of which are pro-

---

[1] All statutory references are to the Internal Revenue Code of 1954.

[2] SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

cedural. Considering first his substantive argument, petitioner contends that section 482 is inapposite in the present situation on the theory that what is involved here is not an allocation among two or more organizations, trades, or businesses, as the terms of that section require, but rather an attempted allocation of income between a corporation and its employee. For the proposition that employment is not deemed a trade or business, petitioner places primary reliance on the Supreme Court case of *Whipple* v. *Commissioner*, 373 U.S. 193 (1963), which in another context held that devoting one's time to a corporation is not of itself and without more a trade or business. While there may well be truth in the latter assertion of petitioner, the weakness of his argument, in our view, rests not in any proposition of law relied upon but in his conception and characterization of the facts presented. The evidence in this case does not, in our judgment, support the factual conclusion which lies at the heart of petitioner's opposition to the proposed application of section 482, to wit, that petitioner engaged in no trade or business other than that of being a corporate employee. In reaching this result, we rely heavily upon the decisions of this Court in *Pauline W. Ach*, 42 T.C. 114 (1964), affd. 358 F. 2d 342 (C.A. 6, 1966), certiorari denied 385 U.S. 899 (1966), and of the Second Circuit in *Borge* v. *Commissioner*, 405 F. 2d 673 (C.A. 2, 1968), affirming a Memorandum Opinion of this Court, certiorari denied 395 U.S. 933 (1969). In both of these cases, on facts analogous in many respects to those of the present case, the Court held that income received by a corporation for services performed by an individual in control of the corporate affairs was properly held subject to the power of allocation conferred upon the Commissioner by section 482.

In *Ach* the taxpayer's son had for some time owned a controlling interest in a corporation which consistently incurred losses in its operations. During the same period the taxpayer conducted a highly successful dress business in the form of a proprietorship. In 1953, in a transaction apparently designed to secure for the dress business the benefits of net operating losses which had in prior years accrued to the corporation, the corporation discontinued its unprofitable operations and simultaneously acquired from taxpayer her interest in the dress business. Taxpayer thereafter, presumably as an employee of the corporation, continued to operate the dress business but received no compensation for her efforts. She was neither bound by contract to continue rendering her crucial services for the benefit of the corporation nor inhibited by covenant or otherwise from competing with it. The Commissioner, relying upon both of the theories advanced to support a similar action in the present case, sought to tax the business income of the corporation to the taxpayer. The Court rebuffed the efforts of the

Commissioner to disregard the corporate fiction on the facts before it, citing particularly the fact that assets transferred to the corporation were actually used in the conduct of its business. With regard to the Commissioner's reliance on section 482, however, the Court over an objection of the taxpayer predicated upon arguments similar to those put forth by petitioners in the present case, sustained the right of the Commissioner to allocate a portion of the income received by the corporation to the taxpayer. Commenting on the scope of section 482, the Court stated:

> Section 482 is remedial in character. It is couched in broad, comprehensive terms, and we should be slow to give it a narrow, inhospitable reading that fails to achieve the end that the legislature plainly had in view. We think that the statute is not made inapplicable by its reference to "two or more organizations, trades, or businesses."

The Court apparently found it unnecessary to decide whether section 482 warranted an allocation between a corporation and an employee, concluding, on the facts, that taxpayer was not a mere employee but rather continued after the purported transfer of the proprietorship assets to conduct a dress business jointly with the corporation.

The facts of *Borge*, a decision of the Second Circuit to which, in view of the light it throws upon our mandate in the instant proceeding, we accord controlling importance, bear even closer resemblance to those of the case at bar. The taxpayer in that case, a well-known entertainer, owned a poultry farm which produced losses in 5 consecutive years. Prompted by a desire to avoid the consequences of a Code section then in effect limiting the amount of deductions allowable in the case of individuals, Borge formed a corporation and transferred to it, in exchange for all its stock, the assets of the poultry business. To offset expected losses from farm operations, Borge then entered into a contract with the corporation under which he agreed to perform entertainment services for it in return for a fixed salary of $50,-000 per year. His annual net entertainment income for the years in dispute far exceeded the $50,000 stipulated in the contract. On these facts the Second Circuit affirmed the conclusion of the Tax Court that section 482 was applicable to authorize the Commissioner's allocation of a portion of the income received by the corporation to Borge. Again, proceeding on the premise that he was a mere employee of the corporation, Borge contended, as did petitioner in *Ach* and as does petitioner in the case at bar, that section 482 does not apply. The court held otherwise, stating:

> We accept, as supported by the record, the Tax Court's findings: that Borge operated an entertainment business and *merely assigned to Danica* [the corporation] *a portion of his income from that business;* that Danica did nothing to earn or to assist in the earning of the entertainment income; that Borge would

not have contracted for $50,000 per year with an unrelated party to perform the services referred to in his contract with Danica. Thus Borge was correctly held to be in the entertainment business. [Emphasis added. *Borge* v. *Commissioner* at 676]

Directing itself to Borge's reliance upon *Whipple*, the court pointed out:

Here, however, Borge was in the business of entertaining. He was not devoting his time and energies to a corporation; he was *carrying on his career as an entertainer, and merely channeling a part of his entertainment income through the corporation.* [Emphasis added. *Borge* v. *Commissioner* at 676]

As in *Ach*, the court in *Borge* did not consider whether employment status, standing alone, constituted a trade or business for purposes of section 482.

As indicated, the facts of the instant case closely parallel those of *Borge*. Here, as there, the effect of the transactions is to channel income generated by petitioner through his performance of management services for Dorman Mills to a controlled corporation. Petitioner does not dispute the holdings of either the *Ach* or *Borge* cases, but seeks to distinguish those cases on several grounds.

It is true, as petitioner is quick to point out, that the individuals in both of the cited cases had engaged in business as a proprietorship prior to the formation of corporations to take over their business operations. However, we regard this factor as only one of many to be weighed in determining whether activities of a shareholder constituted a trade or business. Prior history is not, and should not be, conclusive to such a determination. Moreover, in the present case, as in *Borge*, the services for which the corporation became entitled to compensation were rendered to parties other than the employing corporation. As petitioner has repeatedly stressed the corporation to which the services were actually rendered and which paid the fees in question was Dorman Mills, whereas the attempted allocation is not between Dorman Mills and Park but between Park and Rubin. Thus, as we view the situation the management services performed by petitioner are the clear counterpart of the entertainment services performed by Borge and the cases are not as divergent as petitioner would have us believe.

Nor do we believe that the purpose for which the corporation was formed serves to distinguish these cases from the case at hand. Admittedly, the use of the corporate device in *Borge* and *Ach* was seized upon to permit the taxpayer to offset the losses of one business against those of another whereas in the immediate case it merely resulted in a deflection of income from one taxpayer to another. But to the extent that the transactions gave rise to a distortion of income, each of the cases presents an equally cogent case for an application of section 482.

In some respects, it should be noted, the facts of the instant case make out an even stronger plea for the application of section 482 than those of *Borge*. For example, petitioner in this case, unlike Borge, neither entered into contract with his putative employer nor relinquished to the slightest degree his control over production of the income. In view of the control he possessed over both payor and payee corporations, petitioner could have terminated his employment status virtually at will, thereby divesting Park of any further claim to the proceeds of his labor. We recognize, of course, that there are also factors in this case which tend to militate in the opposite direction, such as the existence of other shareholders and their contribution of substantial sums of capital to the corporation. These factors, along with others menioned in our present and prior opinions, are to be thrown into the hopper in performing an allocation under section 482; they do not, however, warrant a conclusion that section 482 is wholly inapplicable.

Petitioner has also invoked the personal holding company provisions and accompanying legislative history as evidencing the congressional belief that section 482 was not intended to be applied to personal service corporations in the manner presently sought by the Commissioner. At best, as petitioner himself recognizes, these provisions show only that Congress, in assessing the merits of the personal holding company proposals then under consideration, acted under a belief that existing provisions of the Code were inadequate to deal with the varied problems surrounding personal holding companies, of which the matter before us is only one example. It certainly cannot be seriously contended that the availability of section 482 in situations such as the present one would have obviated the need for those provisions. While petitioner's review of legislative history does provide helpful insight into the intentions of Congress in enacting the personal holding company provisions, we find nothing in those provisions or their legislative history to preclude a limited application of section 482 in the present situation. As the court in *Borge*, rejecting a similar contention advanced by the taxpayer in that case, said:

> We do not read those provisions, however, as the only available methods for dealing with situations there involved. As the Third Circuit said in *National Sec. Corp.* v. *Commissioner*, 137 F. 2d 600, 602 (3d Cir.), cert. denied, 320 U.S. 794, 64 S.Ct. 262, 88 L. Ed. 479 (1943).
>
> "In every case in which [Section 482] is applied its application will necessarily result in an apparent conflict with the literal requirements of some other provision of the [Internal Revenue Code]. If this were not so Section [482] would be wholly superfluous." [*Borge* v. *Commissioner* at 677]

Petitioner has characterized the present efforts of the Commissioner in seeking to tax petitioner on some or all of the income received by the corporation as an attempt to increase the salary of a corporate employee, an attempt which, petitioner asserts, is entirely novel and

one which has not to date received the approval of any court. He expresses "horror" at the prospect should the respondent prevail in this case that the effect of such a decision would be to confer upon the Commissioner the authority to freely increase the salary of corporate employees upon a finding at his discretion that the compensation paid to the employee was inadequate. We emphasize, however, that having found it unnecessary to consider this question, we do not today hold that employment status constitutes, in and of itself, a trade or business within the meaning of section 482. Nor have we ruled that section 482 empowers the Commissioner at will to readjust the salaries of corporate employees. We merely hold, as is the clear import of both the *Ach* and *Borge* decisions, that where the particular facts of a case are such as to justify a finding that a shareholder operated an independent business and merely assigned to the corporation a portion of the income therefrom, the business activity of the taxpayer may constitute a trade or business to which allocation of all or part of the income attributable to his efforts is authorized under section 482. We have so found in the case before us.

The interrelationship between section 61, which subsumes the assignment-of-income principles established by *Lucas* v. *Earl, supra,* and section 482, providing for allocation among entities, trades, or businesses subject to common control, has in the past found expression in a number of cases. In *Grenada Industries, Inc.,* 17 T.C. 231 (1951), affd. 202 F. 2d 873 (C.A. 5, 1953), the Commissioner, relying on the predecessors of both sections 61 and 482, sought to allocate a portion of the income received by one corporation to another. After deciding that the facts presented did not warrant disregard of the corporate entity, the Court stated at page 253 :

> the general provisions of section 22(a) [now section 61] are undoubtedly sufficient to charge the income to the one that actually earned it. [Citations omitted.] But in the case of organizations under common control, the detailed provisions of section 45 of the Code [now section 482] explicitly authorize the Commissioner to unscramble any such situation, so that income may be charged to the organization that earned it. Thus, to the extent that section 45 may be applicable, section 22(a) adds nothing to the strength of respondent's position here. * * *

See also *Local Finance Corp.,* 48 T.C. 773 (1967), affd. 407 F. 2d 629 (C.A. 7, 1969), certiorari denied 396 U.S. 956 (1969) ; and *Philipp Bros. Chemicals, Inc. (Md.),* 52 T.C. 240 (1969), affd. 435 F. 2d 53 (C.A. 2, 1970).

Facts and circumstances in the case before us which have led us to conclude that petitioner is taxable as an assignor of income have been set forth in our earlier opinion. Significantly, as we interpret the opinion of the Second Circuit, the court did not disturb our essential findings, which as already stated, closely parallel those of *Borge,* but

merely questioned the propriety of resorting to broad judicial doctrines at a time when more precise statutory tools may be available. We rely on *Borge* for the proposition that assignment-of-income principles may be employed to the limited extent of supporting the existence of a trade or business on the part of a shareholder who purportedly acts as a corporate employee in conducting his business affairs.[3] And while the Second Circuit, in disapproving our reliance on *Lucas* v. *Earl*, has stopped short of holding section 482 applicable since both procedural and substantative matters remained for decision, the fact that a decision contrary to the one we presently reach would significantly impair the validity of the circuit court's reasoning and would reach a result out of harmony with its holding cannot be ignored. The narrow construction of section 482 urged by petitioner would only compel resort to the less refined sweep of judicial doctrines such as those relied upon in our prior opinion. For the reasons indicated, it is our conclusion that substantively section 482 may appropriately be applied in the case at bar.

As noted, in addition to substantive contentions previously discussed, petitioner also renews several procedural arguments advanced in the prior proceeding before this Court. Insofar as these relate to the question of which party must bear the burden of proof in this case, we have in our prior opinion found a resolution of this question to be unnecessary since the record contains sufficient evidence to support a decision on the merits. Nothing has since transpired to compel a revision of our original disposition of the issue. While the substantive matter before us on remand differs from that previously considered, the facts tending to support our prior holding in this case, as indicated above, are similar to those which would establish the basis for an allocation under section 482. If, as petitioner contends, respondent must shoulder the burden of proof in this case, he has, on the record before us, carried this burden. See *Nat Harrison Associates, Inc.*, 42 T.C. 601, 617–618 (1964).

In his only procedural argument which does not relate to burden of proof, petitioner contends that reliance may not be placed on section 482 to justify a decision in this case since notice of respondent's intended reliance on that section did not appear in either the notice of

---

[3] As petitioner contended on brief before the Second Circuit in this case, the court in *Borge* having accepted the conclusions of this Court that the transactions presented no more than an attempt to assign the income of Borge to the corporation, conspicuously, and we think also intentionally, refrained from applying the doctrine of *Lucas* v. *Earl*, 281 U.S. 111 (1930), in favor of applying sec. 482 to correct any income distortions which thereby resulted. Cases such as *Fontaine Fox*, 37 B.T.A. 271 (1938), and its progeny, holding *Lucas* v. *Earl* inapposite to "loaned employee" situations, were not considered in *Borge* to compel a contrary holding since sec. 482 (or its predecessor) was not relied upon or considered in those cases. The same holds true for the instant case. See *Rubin* v. *Commissioner*, 429 F. 2d 650, 654 fn. 8 (1970).

deficiency or the pleadings. Petitioner candidly concedes, however, that he was aware of respondent's intention to proceed under section 482, having been so informed by representatives of respondent during a conference between the parties held well in advance of trial.

In *Nat Harrison Associates, supra,* this Court held that—

While respondent did not mention his reliance on section 482 in either the notices of deficiencies or his pleadings, it is obvious that petitioners were not taken by surprise by this contention and, while such pleading hardly complies with the spirit of the rules of pleading of this Court, we think respondent may rely on section 482 in this case without amending his pleadings. Cf. *Commissioner* v. *Chelsea Products,* 197 F. 2d 620 (C.A. 3, 1952), affirming 16 T.C. 840 (1951) ; *Arthur Sorin,* 29 T.C. 959 (1958), affirmed per curiam 271 F. 2d 741 (C.A. 2, 1959). * * *

Aware of the contrary holding of this Court in *Nat Harrison Associates,* petitioner seeks reversal of that holding on the ground that it is contrary to the weight of authority, citing *Maxwell Hardware Co.* v. *Commissioner,* 343 F. 2d 713, 721 (C.A. 9, 1965, reversing *Arthur T. Beckett,* 41 T.C. 386 (1963) ; *United States* v. *First Security Bank,* 334 F. 2d 120 (C.A. 9, 1964) ; *Commissioner* v. *Chelsea Products,* 197 F. 2d 620 (C.A. 3, 1952), affirming 16 T.C. 840 (1951) ; and *Ross* v. *Commissioner,* 129 F. 2d 310 (C.A. 5, 1942), reversing 43 B.T.A. 1155 (1941). While these cases do indicate that failure of the Commissioner to give the taxpayer adequate notice of his intention to rely on section 482 will constitute grounds for a court's refusal to allow the Commissioner later to invoke those provisions in support of his deficiency, they neither hold nor imply that the notice need comply with any formal requirements such as inclusion in the notice of deficiency or pleadings. If anything, these cases support the more logical rule announced in *Nat Harrison Associates* which would make the Commissioner's right to rely on section 482 depend upon his providing to the taxpayer fair warning of his intention to proceed under section 482. Fair warning in this context means that a taxpayer must not, by reason of the Commissioner's failure to timely notify him, have been prejudiced or harmed in his ability to prepare for trial.

In *Chelsea Products* at 624, the circuit court justified its refusal to consider the Commissioner's arguments predicated on section 482 in the following terms:

This considerable power given the Commissioner certainly carries with it a correlative *duty to give the taxpayer fair notice in advance of hearing that the Commissioner has proceeded under Section 45* [now section 482]. The taxpayer can hardly shoulder its burden if it does not know the Commissioner has proceeded under Section 45 * * * [Emphasis added.]

In applying these principles to bar the Commissioner's reliance on section 482 where he had failed to furnish the requisite notice to the

taxpayer, the court in *United States* v. *First Security Bank, supra*, did so on the basis that it could find no determination of the Commissioner as required by the terms of section 482 "in the entire printed record, including exhibits." In both *Chelsea Products* and *First Security Bank*, as well as other cases relied on by petitioner, it appears that the Commissioner neither relied on section 482 before this Court nor gave notice of his intent to rely on that section. We think that the clear inference of the cited cases is that the fair-notice requirement implicit in the provisions of section 482 may be satisfied by a form of notice other than one contained in the notice of deficiency or in the pleadings provided, of course, it is given to taxpayer sufficiently in advance of trial to allow for his adequate preparation. Reference in these cases to such specific vehicles of notice as the notice of deficiency or the pleadings, which petitioner apparently relies upon for the proposition that those are the only valid forms of notice was, we think, intended by way of illustration rather than by way of limitation.

In the case at bar, petitioner does not allege that he was not fully aware of the issues to be tried or that he was prejudiced or harmed by failure of the Commissioner to give notice. Cf. *Luke* v. *Commissioner*, 351 F. 2d 568 (C.A. 7, 1965). Indeed, as already indicated, he readily admits that such notice was given to him well in advance of trial. We thus hold that respondent may properly rely on section 482.

Our remaining task is to determine the proper allocation under section 482. *Ach* v. *Commissioner*, 358 F. 2d at 345. On the basis of the entire record we have concluded that petitioner is charged with additional income in the amounts of $4,400 and $23,500 for the years 1960 and 1961, respectively.[4] In making this determination we have considered particularly the fact that a full 30 percent of the stock of Park was held by persons other than petitioner; that these shareholders contributed $10,000 each to the corporation which, in turn, made the funds available at some risk to Dorman Mills, thereby contributing to the later success of that corporation and making possible the income payments in question to Park; that the corporate arrangement in this case was employed for reasons unrelated to tax avoidance, other attempts to accomplish the objectives for which Park was created having failed; and, finally, that funds received by the corporation were ultimately used by it to conduct an art venture in which shareholders other than petitioner played an active role.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TANNENWALD, *J.*, did not participate in the consideration or disposition of this case.

---

[4] These figures reflect the portion of income less expenses allocable to petitioner.