Richard **RUBIN** and Helene **Rubin,**
Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 699, Docket 71–2115.

United States Court of Appeals,
Second Circuit.

Argued May 11, 1972.

Decided May 23, 1972.

Martin D. Ginsburg, New York City (Weil, Gotshall & Manges and Martin B. Amdur, New York City, of counsel), for petitioners-appellants.

Ann Belanger, Washington, D. C., (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and Thomas L. Stapleton, Attys., Tax Division, Dept. of Justice, Washington, D. C., of counsel), for respondent-appellee.

Before FRIENDLY, Chief Judge, McGOWAN* and TIMBERS, Circuit Judges.

PER CURIAM:

This case was here initially, 429 F.2d 650 (2 Cir. 1970), on an appeal by Richard Rubin from a decision of the Tax Court, 51 T.C. 251 (1968), which had upheld a determination by the Commissioner that all payments by Dorman Mills, Inc. to Park International, Inc., Rubin's 70%-owned company, in 1960 and 1961 for his management services constituted gross income to Rubin.[1] The facts are sufficiently stated in our previous opinion and need not be recapitulated here. Our ruling was that the Tax Court should not have upheld the Commissioner's resort to "the broad sweep of § 61" of the Internal Revenue Code of 1954 in a case "where, as here, there is a statutory provision," to wit, § 482, "adequate to deal with the problem presented." 429 F.2d at 653. After quoting from § 482, which authorizes the Commissioner to allocate various items between "two or more organizations, trades or businesses . . . owned or controlled directly or indirectly by the same interests" if this was "necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses," we cited Ach v. C. I. R., 358 F.2d 342 (6 Cir.), cert. denied, 385 U.S. 899, 87 S.Ct. 205, 17 L.Ed.2d 131 (1966), and Borge v. C. I. R., 405 F.2d 673 (2 Cir. 1968), cert. denied, Danica Enterprises Inc. v. C. I. R., 395 U.S. 933, 89 S.Ct. 1994, 23 L.Ed.2d 448 (1969), which had applied the section in somewhat similar circumstances, and remanded for further consistent proceedings.

Rubin contended on remand that § 482 was inapplicable, primarily because of the absence of any organization, trade or business other than Park—a contention which, if sustainable, would simply have put the case back where it was in the first instance. However, in a decision by Judge Fay, reviewed by the full court, 56 T.C. 1155 (1971), it was held, largely on the basis of the same authorities we had cited, that Rubin's furnishing of management services to Dorman constituted an organization, trade or business separate from that of Park. Acting under § 482, the court substan-

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. The amounts paid were $51,581.68 for 1960 and $33,147.52 for 1961. Against these the Commissioner allowed expenses of Park in the respective sums of $16,042.56 and $5,659.18. Rubin had reported as income in this context only his salary from Park, $8,750 in 1960 and $6,900 in 1961. The resulting deficiencies were $5,872 for 1960 and $25,304 for 1961.

tially reduced the amounts of additional income and consequent deficiencies.[2] Not contesting the fairness of the allocation, which gave ample weight to any contributions by Park, Rubin appeals on the ground that none could properly be made.

Like the Tax Court, we are unable to see any significant distinction between this case and the decisions previously cited. Rubin's rendition of management services to Dorman, for which Park was paid sums largely in excess of Rubin's salary and any associated expenses, was as much a trade or business as Borge's furnishing entertainment services for which his controlled corporation was paid sums far greater than it paid him. It is immaterial that Borge had been in the entertainment business long before the formation of the controlled corporation whereas Rubin, although engaged in the textile business for many years, began his services to Dorman concurrently with the formation of Park. It is likewise immaterial that tax avoidance loomed large in Borge's plan; existence of such a motive is not a prerequisite for application of § 482. Save in this last respect, the case seems *a fortiori* to *Ach*, where the taxpayer simply continued to render services to her former dress business whose assets had been acquired by a corporation under common control.

Counsel for the taxpayer asserts that affirmance would necessarily mean that employment for compensation is always a trade or business for purposes of § 482, as we have held it to be for purposes of § 166(d) (2) (A), Trent v. C. I. R., 291 F.2d 669 (2 Cir. 1961), and of other sections of the Code there discussed. See also Whipple v. C. I. R., 373 U.S. 193, 204 n. 12, 83 S.Ct. 1168, 10 L. Ed.2d 288 (1963). We are treated to a parade of horribles wherein the Commissioner would utilize § 482 to reallocate income so as to increase the salaries of all employees of controlled corporations

whom he believes to have been intentionally underpaid. Although the prospect is not so shocking to us as to counsel, we find no need either to embrace or to reject the general proposition which the taxpayer limns. It was Richard Rubin's special ability that Dorman wanted, and it wanted nothing else from Park insofar as management services were concerned. This is enough to constitute his rendition of services for compensation a trade or business. The fair result reached by the Tax Court on remand is precisely what the statute contemplates. Other cases will be decided when they arise.

Taxpayer's further contentions do not merit discussion.

Affirmed.

---

2. The additional income was reduced to $4,400 in 1960 and $23,500 in 1961; the deficiencies were reduced to $3,917.42 and $13,315.42.