DAVID J. McKEAN AND GLORY A. McKEAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKean v. Commissioner
Docket No. 9273-78.
United States Tax Court
T.C. Memo 1981-670; 1981 Tax Ct. Memo LEXIS 74; 42 T.C.M. (CCH) 1709; T.C.M. (RIA) 81670; November 19, 1981. David J. McKean, pro se. Henry B. Miller, for *75 the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1975 in the amount of $ 8,689. The issue for decision is whether the petitioners sustained a casualty loss under section 165 of the Internal Revenue Code of 1954[1] because of the death of a large oak tree, and if so, in what amount. FINDINGS OF FACT Some of the facts were stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners David J. McKean and Glory A. McKean resided in Arlington, Virginia, both at the time they filed their Federal income tax return for the taxable year 1975 and when they filed the petition in this case. Petitioners timely filed a Federal income tax return for the taxable year 1975. On August 30, 1976, petitioners filed an amended Federal income tax return on which they claimed an additional deduction of $ 17,586 for the casualty loss of a tree. Petitioners purchased their home in Arlington, *76 Virginia, in 1973. The property that petitioners purchased included a large black oak tree approximately 80 feet in height and in the neighborhood of 100 years of age which was located in the front of the house next to the street, standing along as the dominant feature of the front yard. Petitioners employed the services of Guardian Tree Experts, Inc., to care for the trees and shrubs on their property. Mr. Allen Butler, manager of Guardian Tree Experts, Inc., is a professional arborist, and has been engaged in the field of arboriculture as an employee, manager and part-owner of Guardian Tree Experts, Inc., since approximately 1970. He is licensed by the state of Maryland as a certified tree expert and focuses his efforts on the inspection and diagnosis of unhealthy residential trees and shrubbery. In this capacity he has inspected between 5,000 and 10,000 trees in the 10 years that he has been associated with Guardian Tree Experts, Inc. Mr. Butler was responsible for the maintenance and care of petitioners' trees and shrubbery in his capacity as an employee of Guardian Tree Experts, Inc. Mr. Butler made annual inspections of petitioners' trees and shrubs including the black oak *77 tree. He drove past the petitioners' property in the normal course of his business, and thus frequently had the opportunity to observe any change in the health of the tree. Mr. Butler found the tree to be healthy and vigorous and observed no signs of rot or decay prior to October, 1975. Shortly after August 22, 1975, petitioners noticed that the entire top or crown of the black oak tree had turned brown. None of the leaves on other trees in the area had turned brown. Petitioners telephoned Guardian Tree Experts, Inc., on October 1, 1975, and requested a visit by Mr. Butler to inspect the tree. Mr. Butler visited petitioners' premises on October 16, 1975, and inspected the black oak tree. At that time he observed that the leaves in the entire crown or top of the tree had turned brown and that there was "frass," or "sawdust," on the bark of the tree. Frass is evidence of an attack by insects known as woodborers. Mr. Butler diagnosed that the tree had been attacked by woodborers and that the tree at the time of his inspection was beyond saving and effectively dead. The trunk of a tree typically consists of a large woody core of no longer living material, surrounded by a thin layer *78 of living tissue, which is in turn surrounded by a thin layer of protective bark. The most important part of the thin layer of living tissue is a single layer of cells between the wood and the bark called the cambium layer, in which all of the tree's growth takes place. The circulation of tree fluids occurs in this layer, transporting nutrients up from the roots to the branches and leaves and transporting the products of photosynthesis down from the leaves to the trunk and roots. The circulation of sap fluids in the cambium layer corresponds roughly with the circulation of blood in animals and serves essentially the same purpose. The term "woodborers" refers not to a specific insect, but is a descriptive term covering a substantial number of different species of insects which attack various kinds of trees. Adult borers, which are usually beetles, lay their eggs on or in trees, and the larvae, after hatching from the eggs, proceed to bore tunnels through the tree as they eat. It is usually the larval stage in which the majority of the damage occurs. Woodborers destroy living trees by girdling or completely severing the cambium layer of the attacked tree. When the tunnels of the *79 woodborers intersect and coalesce in the cambium layer so as to completely surround or circle the tree's trunk, they interrupt the tree's circulatory system by physically severing the circulatory path between the tree's roots and its leaves. The browning of the leaves at the top or crown of the tree is an indication that the tree has already been girdled after an attack by woodborers. Petitioners' oak tree was attacked by woodborers sometime in July or August of 1975. These borers tunneled into the oak tree and within approximately a few weeks' time effectively girdled the tree by cutting the cambium layer in the tree and thus severing circulation of sap and tree fluids. No leaves appeared on petitioners' oak tree during the following spring of 1976. On September 1, 1976, the dead tree was cut down and removed by Guardian Tree Experts, Inc. A stump approximately 12 inches in height was left. By the time of trial, after the passage of some four years, the tree stump appeared rotten and significantly changed through natural biological processes. In his statutory notice of deficiency the Commissioner determined that "the $ 17,586 shown on your return as a casualty loss resulting *80 from damage to a 100 year old oak tree from an attack by wood borers is not allowable because it has not been established that loss was a casualty within the meaning of section 165 of the Internal Revenue Code." The Commissioner made another adjustment to petitioners' tax liability which has been settled. In his answer the Commissioner alleged that petitioner had not substantiated the amount of the loss. ULTIMATE FINDINGS OF FACT The death of the black oak tree in question was caused by an attack of woodborers which effectively killed the tree over a relatively short period of time. This massive oak tree was the key and dominant feature of petitioners' front yard, standing alone in the center of the yard near the street, and its loss reduced the fair market value of petitioners' residence by the amount of $ 15,000. OPINION Petitioners maintain that the death of their 100-year-old oak tree in the taxable year 1975 was caused by an attack of woodborers and that the death of this tree is a casualty within the meaning of section 165. Petitioners further contend that the Commissioner failed to challenge the valuation of petitioners' loss in the statutory *81 notice of deficiency and that the issue of the amount of the loss was first raised at trial so that this proceeding should limit itself to the only question addressed in the statutory notice of deficiency, whether the death of the oak tree was a casualty within the meaning of section 165. Petitioners maintain in the alternative that they have established the amount of their casualty loss. Respondent argues that petitioners have not demonstrated that the death of their oak tree was the result of an identifiable event of a sudden, unexpected or unusual nature so as to entitle them to a casualty loss deduction in 1975 pursuant to section 165. Respondent also maintains that the petitioners did not suffer any loss that may be recognized for Federal income tax purposes as a result of their oak tree because there was no decrease in the fair market value of their property as a result of this event. Section 165 provides in pertinent part as follows: Sec. 165 LOSSES. (a) GENERAL RULE.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by *82 insurance or otherwise. (c) LIMITATION ON LOSSES OF INDIVIDUALS.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $ 100. For purposes of the $ 100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return. We hold that petitioners have established by a preponderance of the evidence that the 100-year-old oak tree was killed in 1975 by an attack by woodborers, and that this happened over a relatively short period of time.[2] It appears likely that the culprit was an insect known as the two-line chestnut borer, which is found *83 in the Northern Virginia area. The adult of the two-line chestnut borer comes out in the late spring, in May or June, and then feeds inconspicuously on foliage for a week or 10 days. They then mate and lay eggs on a suitable host tree. In 10 days to two weeks the eggs hatch into larvae so that up to a month can go by after the adults emerge and until the larvae hatch inside the host tree. It is only at this stage, after the larvae hatch, that the destructive girdling process begins. A large oak tree can be effectively girdled in a matter of weeks. The two-line chestnut borer is not a common problem. The attack on petitioners' tree can thus be characterized as "unexpected or unusual in nature." This Court has previously found that another woodborer, the southern pine beetle, can similarly cause damage resulting in a casualty loss within the meaning of section 165. [3] We find that the death of this oak tree, caused by an attack of woodborers, is a sufficiently sudden event to be classified as a casualty under section 165(c)(3). *84 We now consider the amount of this casualty loss. Section 1.165-7(b), Income Tax Regs., provides as follows: (b) Amount Deductible -- (1) General rule. In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for the purposes of section 165(a) shall be the esser of either-- (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in sec. 1.1011-1 for determining the loss from the sale or other disposition of the property involved. (2) Aggregation of property for computing loss. (ii) In determining a casualty loss involving real property and improvements thereon not used in a trade or business or in any transaction entered into for profit, the improvements (such as buildings nd ornamental trees and shrubbery) to the property damaged or destroyed shall *85 be considered an integral part of the property, for purposes of subparagraph (1) of this paragraph, and no separate basis need be apportioned to such improvements. The petitioners claim a deduction in the amount of $ 17,586 for this casualty loss.The Commissioner did not question the amount of the deduction in his statutory notice of deficiency. In his answer he alleged that petitioners failed to substantiate the amount of the loss. At trial the parties offered the testimony of expert witnesses as to the diminution in the value of the property resulting from the loss of the tree. Petitioners, relying upon Commissioner v. Transport Mfg. and Equipment Co., 478 F.2d 731 (8th Cir. 1973) affg. sub nom. Riss v. Commissioner, 57 T.C. 469 (1971), contend that respondent should not be permitted to question the amount of the loss at trial because it was not challenged in the statutory notice of deficiency. Respondent counters by pointing out that he questioned the amount of the loss in the answer he filed and that therefore petitioners were not unfairly surprised. We agree with respondent on this narrow point. Respondent affirmatively alleged *86 in his answer that petitioners failed to substantiate the amount of the loss. At trial petitioners called an expert witness to establish the amount of the casualty loss. Under such circumstances we hold that petitioners were not unfairly surprised or prejudiced by respondent's challenge of the amount of the loss. Accordingly, Rubin v. Commissioner, 56 T.C. 1155 (1971), affd. per curiam 460 F.2d 1216 (2d Cir. 1972), applies and the issue is properly before the Court. The matter does not end there, however. The respondent, by not challenging the amount of the loss in the statutory notice of deficiency and by affirmatively pleading such in his answer, has raised new matter for which he bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.Estate of Floyd Falese v. Commissioner, 58 T.C. 895, 899 (1972); McSpadden v. Commissioner, 50 T.C. 478 (1968); Sanderling, Inc. v. Commissioner, 66 T.C. 743, 758 (1976). Respondent's valuation expert found the total value of petitioners' *87 property to be $ 130,000 before the casualty with a loss in value due to the death of the tree of $ 3,000. Petitioners' valuation expert found the total value of petitioners' property to be $ 164,500 before the casualty with a loss in value due to the death of the tree of $ 15,000. Based upon our observation of the expert witnesses while testifying at trial; their experience and qualifications; their familiarity with the property before and after the casualty; the comparable properties utilized in their valuations and their assumptions, we hold that respondent has not carried his burden of proof. Some of the disparity in views on the amount of the loss is explained by the disparity of views on the overall value of the property before the casualty. We might be inclined to find that the amount of the loss is some amount between the valuations of the two expert witnesses ($ 15,000 and $ 3,000); however there is no evidence, nor are there any factors used by the experts in making their valuations, upon which we could base such a finding, so that such an approach would, of necessity, be based upon pure speculation. Petitioners, on their amended Federal income tax return, claimed that *88 the loss in value of their property was $ 17,686. The only evidence of value offered by petitioners was their expert witness who valued the loss at $ 15,000. We hold, therefore, that the loss of value in petitioners' residence resulting from the casualty loss of the tree is $ 15,000 which, reduced by the $ 100 limitation, results in a deduction of $ 14,900. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The present facts are distinguishable from our recent holdings that loss caused by a disease carried by insects, as opposed to an attack by the insects themselves, does not constitute a casualty loss, Coleman v. Commissioner, 76 T.C. 580 (1981), especially if it is a lingering, gradual deterioration. Maher v. Commissioner, 76 T.C. 593↩ (1981). 3. Black v. Commissioner, T.C. Memo. 1977-337; Nelson v. Commissioner, T.C. Memo. 1968-35↩, appeal dismissed (5th Cir., Oct. 14, 1968).