JOHN L. FATLAND AND DONITA V. FATLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fatland v. Commissioner
Docket No. 9258-82.
United States Tax Court
T.C. Memo 1984-489; 1984 Tax Ct. Memo LEXIS 182; 48 T.C.M. (CCH) 1107; T.C.M. (RIA) 84489; 5 Employee Benefits Cas. (BNA) 2442; September 12, 1984. Paul M. Thielking, for the petitioners. Jack Forsberg, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge:* Respondent determined deficiencies in petitioners' joint Federal income *183 taxes for calendar years 1977, 1978, and 1979 in the amounts of $20,600.58, $14,142.74, and $15,144.61, respectively. The issue presented for determination is whether the income attributable to petitioner John L. Fatland's medical practice is taxable to him instead of his wholly owned professional corporation. FINDINGS OF FACT All of the facts have been stipulated, and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioners John L. Fatland and Donita V. Fatland, [1] resided in Des Moines, Iowa. They filed their 1977, 1978, and 1979 joint Federal income tax returns with the Internal Revenue Service Center in Kansas City, Missouri. John L. Fatland (petitioner) is a physician licensed to practice medicine in the State of Iowa. Prior to October 2, 1975, petitioner *184 was a general partner in a partnership (partnership) organized to conduct a medical practice specializing in urology. As a general partner in the partnership, petitioner provided medical services to the partnership's clients and received his proportionate share of the partnership's net income. On October 2, 1975, petitioner incorporated a professional corporation, John L. Fatland, M.D., P.C. (corporation), under the State laws of Iowa. The corporation kept minutes of the organizational meeting, annual stockholders' and board of directors' meetings, and special meetings. The corporation had a separate checking account through which all cash expenditures were made. The corporation subscribed to periodicals and paid costs for petitioner's attendance at seminars. In addition, the corporation purchased tangible assets consisting of two calculators, an adding machine, a tape player, office furniture, and medical equipment. The corporation filed corporate income tax returns reporting the distributive share of the partnership's income attributable to the interest which petitioner held in the partnership in the amount of $104,387.79 in 1977, $98,183.52 in 1978, and $105,561.72 in 1979. *185 [2]The corporation paid all required State and Federal taxes. The corporation adopted corporate bylaws on October 2, 1975, a medical expense reimbursement plan on October 6, 1975, and an employee ownership plan covering professional employees (ESOP) on December 18, 1975. Petitioner was the only employee and, accordingly, was the only person eligible to participate in either the medical expense plan or the ESOP. All contributions by the corporation to the ESOP, during the respective years, were made by the transfer of corporate shares of stock. The corporation claimed deductions for contributions to the ESOP of $9,000 in 1977, $9,900 in 1978, and $11,378.43 in 1979. Petitioner was the sole incorporator and sole director, and was the president and secretary-treasurer of the corporation. Petitioner and the ESOP were the corporation's only shareholders. The partnership employed *186 the nonprofessional employees and paid the office, lab, and medical expenses. The partnership paid the rent expenses for the partnership office which was also the office of the corporation. The corporation paid no rental expenses. The partnership purchased malpractice insurance during the respective calendar years insuring itself, petitioner, and the other physicians in the partnership's practice. Neither petitioner nor the corporation purchased any malpractice insurance. The partnership adopted an employee profit-sharing plan covering nonprofessional employees (profit-sharing plan) effective October 2, 1975.The corporation claimed deductions for contributions to the profit-sharing plan of $2,844.30 in 1977, $2,997.19 in 1978, and $2,892.76 in 1979. A written employment contract and an assignment of interest in the partnership were prepared for the corporation and petitioner contemporaneously with the formation of the corporation, although no documents were executed until sometime after 1979 and subsequent to the commencement of the examination of the petitioner's tax returns. Petitioner rendered no services other than those performed in the partnership's practice. Per the *187 corporate books and records, petitioner received a salary of $60,000 in 1977, $66,000 in 1978, and $75,856.23 in 1979. The corporation withheld Federal and State income taxes from the amounts paid to petitioner and remitted it to the appropriate taxing authorities. The corporation declared no dividends during the respective years but made nine loans to petitioner totaling $38,532 and evidenced by promissory notes with a stated interest rate of 5-percent per annum. Except for an amount less than $4,000, the loans were not repaid prior to the end of 1979. The corporate books and records reflected these unpaid balances, however, as "notes receivables and loans to officers" and "accrued interest receivable." During the years in issue, the corporation reported the distributive share of partnership income on its corporate tax return and petitioner reported only the corporate wages on his personal income tax return as income and deducted certain employee business expenses. In the statutory notice of deficiency, the respondent allocated the distributive share of the partnership income reported by the corporation to the petitioner except for certain interest and dividend income reported *188 by the corporation. The respondent took into account the amount reported on petitioner's return as salary received from the corporation but otherwise allocated the corporate deductions, credits, and allowances to the petitioner. OPINION The issue for decision is whether the income of petitioner's wholly owned professional corporation is includable in petitioner's tax returns for the taxable years 1977, 1978, and 1979. Respondent argues that, either under section 482[3] or section 61, the income received by the professional corporation for petitioner's services to patients should be allocated from the professional corporation to petitioner. Petitioner, on the other hand, contends that neither section 482 nor section 61 sanctions the allocations made by respondent. We agree with petitioner. Section 482 Allocation
Section 482[4] authorizes respondent to allocate gross income, deductions, and credits between any two *189 or more organizations, trades, or businesses which are owned or controlled by the same interests, where it is necessary to prevent evasion of taxes or to reflect the income of each taxpayer's business. The respondent has broad discretion in applying section 482. His determination must be upheld unless petitioner proves respondent abused that discretion, i.e., that the determination is arbitrary, capricious, or unreasonable. Achiro v. Commissioner,77 T.C. 881, 900 (1981); Jordan v. Commissioner,60 T.C. 872, 882 (1973), affd. 514 F.2d 1209 (8th Cir. 1975); Marc's Big Boy-Prospect, Inc. v. Commissioner,52 T.C. 1073, 1092 (1969), affd. 452 F.2d 317 (7th Cir. 1971); Ballentine Motor Co. v. Commissioner,321 F.2d 796, 800 (4th Cir. 1963), affg. 39 T.C. 348 (1962); Grenada Industries, Inc. v. Commissioner,17 T.C. 231, 255 (1951), affd. 202 F.2d 873 (5th Cir. 1953), cert. denied 346 U.S. 819 (1953). *190 Section 482 properly applies to the one-man personal service corporation situation. Pacella v. Commissioner,78 T.C. 604, 618 (1982); Keller v. Commissioner,77 T.C. 1014, 1022 (1981), affd. 723 F.2d 58 (10th Cir. 1983). Section 482 will not be sanctioned, however, simply because one purpose for the incorporation was to obtain the benefits of a medical reimbursement plan and pension plan so long as the corporation engages in business activity. Pacella v. Commissioner,supra at 618; Keller v. Commissioner,77 T.C. at 1030. In the instant case, respondent does not contend that the corporation is a sham or that it should not be recognized as a separate taxable entity under the doctrine in Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943). Further, the respondent does not contend that personal service corporations generally should not be treated as corporations for Federal income tax purposes. [5] Petitioner agrees that the corporation is not a sham but contends that respondent *191 may not challenge the tax treatment of the income received. However, the mere recognition of a corporation as a separate taxable entity does not automatically preclude respondent's use of section 482. [6]
*192 The rationale of respondent's argument is that, although the corporation is a viable taxpaying entity, petitioner should be taxed on all the income generated by his services because petitioner controlled his wholly owned professional corporation. The facts in this case are substantially identical to those in our Pacella opinion. Accordingly, we reject respondent's argument because the control issue is resolved by our finding that the corporation is engaged in business activity. Pacella v. Commissioner,supra at 618-619. This Court has consistently held that section 482 may be applicable to the situation where a shareholder/employee "controls" his wholly owned professional corporation. [7]Pacella v. Commissioner,supra at 618; Keller v. Commissioner,77 T.C. at 1023-1024. This Court in Keller v. Commissioner,77 T.C. at 1023-1024, found that, although there was a controlled corporation involved, two levels of operating the medical practice existed. The business at the corporate level was providing medical *193 services as a partner in the medical partnership and the business at the taxpayer level was providing services as an employee of his wholly owned corporation. [8]
*194 Respondent makes four points to support his argument that petitioner controlled the corporation and therefore disregarded the corporation as an entity and precluded it from carrying on a separate business activity. First, respondent strenuously argues that the absence of a written employment contract or a covenant not to compete should be sufficient to support allocation of all the income to the petitioner. However, the lack of an employment contract or a covenant not to compete is not a critical factor. Pacella v. Commissioner,supra at 619; Foglesong v. Commissioner,77 T.C. 1102, 1104 (1981), revd. 691 F.2d 848 (7th Cir. 1982), on remand from 621 F.2d 865 (7th Cir. 1980), revg. a Memorandum Opinion of this Court; Rubin v. Commissioner,56 T.C. 1155, 1156-1160 (1971), affd. per curiam 460 F.2d 1216 (2d Cir. 1972), on remand from 429 F.2d 650 (2d Cir. 1970), revg. 51 T.C. 251 (1968). As we stated in Pacella v. Commissioner,supra at 619, while a written contract would have been advisable from a tax-planning perspective, the *195 absence of any written contract is not fatal. The actions of the corporation, medical partnership, and petitioner, Dr. Fatland, are controlling. The medical partnership distributed the income to the corporation as a partner in the partnership. The corporation paid petitioner a salary and withheld taxes from such wages. Petitioner worked exclusively for the corporation. As the Seventh Circuit held in Foglesong,[9] the fact that a professional worked exclusively for a corporation is more significant than any paper obligation which may have been executed. [10] See Foglesong v. Commissioner, 691 F.2d at 852 and 621 F.2d at 872. *196 Second, respondent argues that we must allocate the income to Dr. Fatland because the corporation made loans to Dr. Fatland. We point out, however, that promissory notes were signed and the corporate records reflect any unpaid balances as "notes receivable" and "accrued interest receivable." We believe the actions of the parties in this case accurately reflect the actions of two unrelated parties in making loans. Third, respondent notes that the corporation's offices were also the offices of the medical partnership and Dr. Fatland's corporation did not pay rent. We recognized in Keller, as we do here, that the absence of a separate office is not fatal. Keller v. Commissioner,77 T.C. at 1032. The corporation carried on the business of providing medical services both to the medical partnership and to individual patients during the years in question. The corporation could use the same office as a partnership and there was no apparent business need for the corporation to obtain a new office or to pay rent. Finally, respondent points out that neither petitioner nor his professional corporation purchased malpractice insurance. The partnership purchased the *197 insurance. Under State law, a professional is not insulated from personal liability arising from the performance of professional services even though a professional corporation is formed. [11] We do not place any significance on the fact that the partnership purchased the insurance for the partners (including insurance with respect to the corporation) and each partner's distributive share of partnership income was reduced accordingly. The corporation in this case was duly organized under State law, observed many corporate formalities, filed separate Federal income tax returns, maintained a separate checking account, maintained separate corporate records of income and expenses, adopted an ESOP and a medical reimbursement plan, contributed to the ESOP and medical reimbursement plan, owned office furniture and office equipment, subscribed to periodicals, hired an employee (Dr. Fatland), incurred costs for its employee to attend seminars, paid wages and withheld taxes, and provided medical services to the partnership and to individual patients. We find that the corporation in this case engaged in a business and that petitioner *198 and the corporation are separate taxable entities. We now must consider whether respondent abused his discretion in allocating the income, deductions, and credits from the corporation to petitioner under section 482. The relevant inquiry under section 482 is whether petitioner's professional corporation and petitioner would have entered into their financial relationships had they been unrelated parties dealing at arm's length. Pacella v. Commissioner,supra at 619; Keller v. Commissioner,77 T.C. at 1025; Achiro v. Commissioner,supra at 897; Ach v Commissioner,42 T.C. 114, 124-125 (1964), affd. 358 F.2d 342 (6th Cir. 1966), cert. denied 385 U.S. 899 (1966); Foglesong v. Commissioner,77 T.C. at 1104; see section 1.482-1(b)(1), Income Tax Regs. If the professional corporation's gross receipts continued to be on par with petitioner's gross receipts in the pre-incorporation years, it is reasonable to assume that petitioner, in an arm's-length transaction with an unrelated party, would have bargained for a total compensation package *199 that would approximate the amounts he previously received as a partner in the partnership. Pacella v. Commissioner,supra at 620; Keller v. Commissioner,77 T.C. at 1025. Prior to the years at issue, the corporation's distributive share of partnership income was $97,686.48 in 1976 and $91,250.96 [12] in 1975. During the three years at issue, the professional corporation received $105,561.72 in 1979, $98,183.52 in 1978, and $104,387.79 in 1977, as a distributive share of the partnership income. The amount that petitioner received from the corporation included total compensation [13] in 1979 of $90,127.42 (consisting of $75,856.23 in wages, $11,378.43 in pension plan contributions on his behalf, and $2,892.76 in medical expense reimbursements), total compensation in 1978 of $78,897.19 (consisting of $66,000 in wages, $9,900 in pension plan contributions on his behalf, and $2,997.19 in medical expense reimbursements), and total compensation in 1977 of $71,844.30 (consisting of $60,000 in wages, $9,000 in pension plan contributions on his behalf, and $2,844.30 in medical expense reimbursements). Thus, in the absence of incorporation, petitioner *200 would have received approximately $20,000 more in cash than he received after incorporation. As recognized in Pacella v. Commissioner,supra at 621, and Keller v. Commissioner,77 T.C. at 1028, pension plan contributions may be worth more to a high-bracket taxpayer than any equivalent payment he would have received outright. [14] We find it reasonable to conclude that an individual in petitioner's position would have accepted employment with an uncontrolled corporation at a lower salary, considering the additional benefits, as presented in this case. The aggregate *201 compensation paid to or on behalf of petitioner was substantially proximate to what petitioner would have received without incorporating. Accordingly, we hold for petitioner and reject respondent's section 482 allocation as being arbitrary. Pacella v. Commissioner,supra;Ballentine Motor Co. v. Commissioner,321 F.2d 796 (4th Cir. 1963). Section 61 Assignment of Income
Respondent next argues that if we decline to allocate any of the professional corporation's income to Dr. Fatland under section 482, we must assign income to petitioner under section 61. We decline to do so. *202 The effect of assigning income under section 61 is to hold that the personal service corporation is a sham. [15] This Court has most recently held [16] that section 482 and not section 61 applies to the professional medical service corporation situation. In addition, two circuits have reversed this Court where we have sought to apply the common law doctrine of assignment of income. [17] Based on this record, the assignment of income doctrine has no place in the personal service context as long as even minimum respect is given to the corporate entity. [18] The concerns that the dissent raised in Keller v. Commissioner[19] have been addressed by Congress in enacting section 269A. [20]
*203 Decision will be entered for the petitioners.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Darrell D. Wiles to Judge Joel Gerber↩ for disposition.
1. Donita V. Fatland is a petitioner solely because she filed joint returns with her husband. Therefore, reference to petitioner in the singular will be to Dr. John L. Fatland.↩
2. Minor inconsistencies exist between the numbers used in the stipulation of facts, statutory notice of deficiency, and attached exhibits. We assume that the numbers used in the stipulation of facts are transposed for 1979 and 1977. These inconsistencies do not affect the outcome of this case.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question.↩
4. SEC. 482.ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businessess, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.↩
5. Respondent announced in Rev. Rul. 70-101, 1970-1 C.B. 278, that professional corporations organized and operated under the State professional corporation statutes enumerated therein would be recognized as corporations for Federal income tax purposes. See also Rev. Rul. 70-455, 1970-2 C.B. 297, that makes Rev. Rul. 70-101 applicable to corporations organized under the Iowa Professional Corporations Act. Rev. Rul. 70-101↩ states that its holding is limited to the issue of the proper classification of professional corporations and that nothing therein "is to be construed as waiving the assertion of any issues against such organizations other than that of classification." 6. Some commentators question whether it is appropriate to apply sec. 482 in the case of a sole shareholder who renders services to his corporation where the shareholder could perform the services as a single business without the corporation. Fuller, Section 482 Revisited, 31 tax L. Rev. 475, 480 (1976); Seieroe & Gerber, Section 482--Still Growing at the Age of 50, 46 Taxes 893, 896 (1968). For the proposition that sec. 482 may represent the end of the professional service corporation, see McFadden, Section 482 and the Professional Corporation: The Foglesong Case, 8 J. Corp. Tax 35 (1981); Feuer, Section 482, Assignment of Income Principles and Personal Service Corporations, 59 Taxes 564 (1981); Burdett, Foglesong's Sec. 482 Approach May Threaten Closely-Held Personal Service Corporations, 53 J. Tax 330↩ (1980).
7. The issue usually revolves around whether "two organizations, trades, or businesses" exist to warrant application of sec. 482. This Court in Keller v. Commissioner,77 T.C. 1014, 1022 (1981), affd. 723 F.2d 58 (10th Cir. 1983), noted that the legislative history of the predecessor of sec. 482 suggests that the terms "trade," "business," and "organization" are to be broadly construed, and that "the regulations promulgated under section 482 are broadly written so as to cover any type of entity or enterprise which has independent tax significance." See cases, regulations, and legislative history cited in Keller v. Commissioner,77 T.C. at 1023-1024↩. 8. This Court in Keller noted that Whipple v. Commissioner,373 U.S. 193 (1963), a case relied on by the taxpayers in Rubin v. Commissioner,56 T.C. 1155 (1971) (reviewed by the Court), affd. per curiam 460 F.2d 1216 (2d Cir. 1972), on remand from 429 F.2d 650 (2d Cir. 1970), revg. 51 T.C. 251 (1968), did not require a contrary view. The issue in Whipple was whether an individual shareholder's devoting of time and effort to his corporation as an investor (and not as an employee) constitutes a business for purposes of the bad debt deduction. Here, as in Keller, part of petitioner's expected financial return was as an employee and was not "income, profit or gain in the form of dividends or enhancement in the value of an investment." Whipple v. Commissioner,supra at 202. See also Borge v. Commissioner,405 F.2d 673, 676 (2d Cir. 1968), affg. a Memorandum Opinion of this Court, cert. denied 395 U.S. 933 (1969); and Ach v. Commissioner,42 T.C. 114 (1964), affd. 358 F.2d 342 (6th Cir. 1966), cert. denied 385 U.S. 899 (1966). This Court in Rubin v. Commissioner,56 T.C. at 1161, relies on Borge v. Commissioner,supra, and Ach v. Commissioner,supra,↩ for the proposition that principles may be used to the limited extent of supporting the existence of a trade or business on the part of a shareholder who purportedly acts as a corporate employee in conducting his business affairs.
9. The Seventh Circuit in Foglesong v. Commissioner,77 T.C. 1102 (1981), revd. 691 F.2d 848 (7th Cir. 1982), on remand from 621 F.2d 865 (7th Cir. 1980), revg. a Memorandum Opinion of this Court, held that the Tax Court improperly applied sec. 482 (in 77 T.C. 1102↩).However, because of the decision we reach in this case, we need not decide whether to follow the decision of the Seventh Circuit.
10. The Seventh Circuit in Foglesong v. Commissioner, 691 F.2d at 852, distinguished the Second Circuit's Rubin v. Commissioner decision (460 F.2d 1216) with respect to the exclusivity issue because the taxpayer in Rubin↩ performed more than $25,000 worth of other work unrelated to the work for his controlled corporation.
11. Iowa Code Ann. sec. 496A.1↩ et seq. (West 1962).
12. This figure results from multiplying $22,812.74 by 4. The $22,812.74 represents the partnership's distributive share from Oct. 2 to Dec. 31, 1975 (i.e., one-fourth of the year).The record does not reflect what Dr. Fatland's distributive share was before Oct. 2, 1975.↩
13. This Court in Pacella v. Commissioner,78 T.C. 604, 620 (1982), and Keller v. Commissioner,77 T.C. at 1028↩, determined that the taxpayer's "total" compensation includes current compensation as well as employee benefit plan and medical reimbursement plan contributions.
14. A footnote in Keller v. Commissioner,77 T.C. at 1028, indicates that this Court was specifically referring to the tax reduction aspects of these plans. The footnote specifically states that "[t]his results both from the exemption from tax for the earnings of a qualified plan's trust and the special tax benefits available on eventual distributions * * * [ref. omitted]." Bailey, Section 482 and the Aftermath of Foglesong: The Beginning or the End for the Personal Service Corporation, 15 Ind. L. Rev. 639, 664↩ (1983).
15. While respondent argues that a finding that a corporation is not a sham does not preclude reallocation under the assignment of income doctrine citing Wilson v. United States,530 F.2d 772 (8th Cir. 1976), revg. and remanding an unreported District Court decision ( W.D. Mo. 1974, 34 AFTR 2d 74-5719, 74-2 USTC par. 9646), that case is distinguishable because the issue involved in Wilson was not whether assignment of income applied to a viable professional corporation but rather whether there was sufficient evidence to overcome a directed verdict. But see Roubik v. Commissioner,53 T.C. 365 (1969), for a case representing the type of factual situation where a "sham corporation argument" could be successful, although this Court did not expressly find that the corporation involved in Roubik↩ was a sham. 16. Pacella v. Commissioner,supra;Keller v. Commissioner,supra.↩
17. Foglesong v. Commissioner,621 F.2d 865; Rubin v. Commissioner,429 F.2d 650↩. 18. Sec. 61 has been used to attribute income to a controlling shareholder where corporate formalities have not been observed and the corporation was not treated as a separate taxable entity that carried on a business activity. Roubik v. Commissioner,supra; Bailey, supra at 671; McFadden, supra at 36. As McFadden, supra at 40, stated: "there is no way to carry out the logic of Lucas v. Earl [281 U.S. 111 (1930)] in the professional corporation situation without severely disturbing the policy for recognizing the corporation as a separate taxable entity. For one commentator's view that sec. 61 still has some viability in the personal service context after the reversal in Foglesong v. Commissioner,691 F.2d 848, see Wood, The Keller, Foglesong, and Pacella Cases: 482 Allocations, Assignments of Income, and New Section 269A, 10 J. Corp. Tax 65, 66 (1983)↩.
19. In a footnote, Judge Wilbur's dissent in Keller v. Commissioner,77 T.C. at 1045, stated "[a]nd plainly, we will sooner or later be confronted with arrangements between professionals and corporations for which sec. 482↩ will be inadequate, and the decision today to so lightly discard the assignment of income doctrine will come home to roost." 20. Although not effective for the taxable years in question, sec. 250 of the Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. 97-248, 96 Stat. 324) enacted sec. 269A. Sec. 269A provides: SEC. 269A. PERSONAL SERVICE CORPORATIONS FORMED OR AVAILED OF TO AVOID OR EVADE INCOME TAX. (a) General Rule.--If-- (1) substantially all of the services of a personal service corporation are performed for (or on behalf of) 1 other corporation, partnership, or other entity, and (2) the principal purpose for forming, or availing of, such personal service corporation is the avoidance or evasion of Federal income tax by reducing the income of, or securing the benefit of any expense, deduction, credit, exclusion, or other allowance for, any employee-owner which would not otherwise be available, then the Secretary may allocate all income, deductions, credits, exclusions, and other allowances between such personal service corporation and its employee-owners, if such allocation is necessary to prevent avoidance or evasion of Federal income tax or clearly to reflect the income of the personal service corporation or any of its employee-owners.↩