PETER J. PLATZER AND ESTATE OF SYLVIA E. PLATZER, DECEASED, PETER J. PLATZER, PERSONAL REPRESENTATIVE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Platzer v. Commissioner
Docket No. 13219-79.
United States Tax Court
T.C. Memo 1981-725; 1981 Tax Ct. Memo LEXIS 20; 43 T.C.M. (CCH) 150; T.C.M. (RIA) 81725; December 23, 1981. Kurtis A. Greenley and Joseph G. Kohler, for the petitioners. Jeffrey D. Lerner, for the respondent. GOFFE
SUPPLEMENTAL MEMORANDUM OPINION GOFFE, Judge: On November 5, 1981, we filed our Memorandum Findings of Fact and Opinion (T.C. Memo. 1981-649) in which we held for petitioners on the "Mardigian facility" issue based upon the parties' stipulation set forth in full in that opinion that the "Findings, conclusion, order, and judgment" of this Court in O'Heron v. Commissioner, T.C. Memo. 1981-648, would be deemed resjudicata as to the same facts and issue in the instant (Platzer) case. On December 1, 1981, respondent filed on the instant case a Motion for Reconsideration and Revision of Opinion in which he incorporates by reference a motion with *21 the identical caption filed the same day in O'Heron v. Commissioner, T.C. Memo. 1981-724. The O'Heron and Platzer cases were tried separately. Because respondent's motions raise a procedural question, we must necessarily file opinions in both the O'Heron and Platzer cases in order to fully set forth the procedural details involved in the respective cases. The common issue in both cases is a factual one concerning a payment of $ 100,000 each by Mr. O'Heron and Mr. Platzer to a Mr. Hoffman whom we found to be an employee of Messrs. O'Heron and Platzer. In the Memorandum Findings of Fact and Opinion filed in the O'Heron case we held some of respondent's arguments, advanced for the first time on brief, to be untimely and accordingly declined to consider them. Respondent, in his Motions for Reconsideration and Revision of Opinion, moves that we reconsider our holding as to one of the untimely arguments. In his motion he contends that an opinion of this Court, affirmed by the Court of Appeals to which appeals in the instant cases would lie, is contrary to our holding in favor of petitioners in the instant cases on the Mardigian property issue. Acer Realty Co. v. Commissioner, 45 B.T.A. 333 (1941), *22 affd. 132 F.2d 512 (8th Cir. 1942). Respondent relies upon our holding in Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), in which we held that this Court would follow the case law of a court of appeals to which a case before us in appealable if the court of appeals for that circuit had previously decided the precise question involved. We have granted respondent's Motion for Reconsideration and Revision of Opinion in part and in response file this Supplemental Opinion. However, we reconsider our opinion filed on November 5, 1981, only as to the procedural question raised in respondent's motion and will not disturb the findings of fact because respondent has not moved that we reconsider our findings of fact. Because we find Acer Realty, supra, distinguishable, we do not reach the issue as to whether Golsen v. Commissioner, supra, would, in any event, be applied to procedural issues as well as substantive legal issues. In Acer Realty, the statutory notice of deficiency disallowed deductions for officers' salaries because they were "in excess of reasonable *23 allowances for salaries or other compensation for personal services actually rendered." The salaries in question were paid to two corporate officers in the ratio of their ownership of the corporate stock for services rendered in formulating and executing plans for the construction of new facilities on the corporation's real property. Their services were found to be equivalent to those performed by a general contractor. Respondent, for the first time on brief, argued that the salaries were in the nature of capital expenditures and petitioners argued that respondent had injected a new issue in the case. We held that the issue in the case was whether the payments to corporate officers represented reasonable allowances for services performed in carrying on the business of the corporation and, therefore, the question of whether the payments were capital in nature was embraced within the issue upon which petitioner had the burden of proof. The Circuit Court of Appeals affirmed, framing the issue in the same manner as did we. It pointed out that if the salaries were not paid for carrying on the business of the corporation, they were not ordinary expenses and the taxpayer had the burden *24 not only to establish that the salaries were reasonable in amount but also that they were ordinary and necessary in carrying on the business of the corporation. The explanation of the adjustment to the taxpayer's tax liability framed in the statutory notice of deficiency in Acer Realty was broad, i.e., that the salaries were in excess of reasonable allowances for salaries or other compensation for personal services actually rendered. In the instant case the deduction was disallowed as not being ordinarybecause it represented the purchase of a third joint venturer's share of the profits from sale of the property and alternatively it was disallowed as not being ordinarybecause it represented the cost of sale of the property. We found as a fact that Mr. Hoffman was an employee, not a joint venturer. Respondent abandoned the argument that the payment to Hoffman was an expense of sale. The specificity of the language of the statutory notice of deficiency coupled with the continued specificity of the nature of the issue as framed by respondent's counsel in his trial memorandum and opening statement distinguishes the facts here from those in Acer Realty. Indeed, *25 in his opening statement counsel for respondent stated that the only way petitioners could prevail was to establish that the payment represented compensation and that it was reasonable. He abandoned the reasonableness test on brief. We found as a fact that the payment to Mr. Hoffman was in the nature of compensation. Having held, therefore, that the new theory of respondent contained in Acer Realty, supra, is not embodied within the theories previously presented at trial in the instant case, we reiterate with more particularity why we concluded in our original opinion that the untimely theory should not be considered. The rule controlling the Commissioner's right to rely on a particular theory is dependent upon his providing the taxpayer fair warning of his intention to proceed under such theory. "Fair warning in this context means that a taxpayer must not, by reason of the Commissioner's failure to timely notify him, have been prejudiced or harmed in his ability to prepare for trial." Rubin v. Commissioner, 56 T.C. 1155, 1163 (1971), affd. 460 F.2d 1216 (2d Cir. 1972). Fox Chevrolet, Inc. v. Commissioner, 76 T.C. 708 (1981). *26 [1] If the taxpayer has had fair warning, he has not been prejudiced and the Commissioner may properly rely upon such theory. Schuster's Express, Inc. v. Commissioner, 66 T.C. 588, 594 (1976), affd. per order (2d Cir., June 10, 1977); see Carnation Co. v. Commissioner, 71 T.C. 400, 412 (1978), affd. 640 F.2d 1010 (9th Cir. 1981). Particularly appropriate here is Commissioner v. Transport Mfg. & Equipment Co., 478 F.2d 731 (8th Cir. 1973), affg. Riss v. Commissioner, 56 T.C. 388 (1971) and 57 T.C. 469 (1971). In that case the Commissioner, in this Court, relied upon section 482, [2] Internal Revenue Code of 1954, for the first time in his brief. We held such reliance to be untimely at page 474 of 57 T.C.: Our inherent authority is to decide cases upon issues properly before us. This case may well have presented opportunities *27 for applying section 482 or some theory within the assignment-of-income area; however, these opportunities were lost when respondent failed to inform petitioner either in the statutory notice, in his answer, or at trial of his intended theory for sustaining the deficiency. Accordingly, we modify our prior opinion and hold that petitioner realized none of the gain from the sale of the truck trailers. In affirming, the Court of Appeals for the Eighth Circuit held at pages 735, 736 of 478 F.2d: If a violation of a particular Internal Revenue Code section, Treasury regulation, or theory based on sections or regulations is involved, the Commissioner should notify the taxpayer of that section, regulation or theory. The failure to advise the taxpayer of such information is extremely prejudicial. Deficiency assessments are usually presumptively correct, and the taxpayer has the burden to prove them wrong. [6] The taxpayer works at an extreme disadvantage in trying to invalidate deficiency assessments if he does not specifically know why the Commissioner is challenging the taxpayer. [7] If the notice of deficiency does not state the reason for the deficiency, the Commissioner should *28 then inform the taxpayer of the Code sections and theories in his answer. That is precisely the reason for the explicit provisions of Rule 14(b) of the Tax Court, which states: "(b) Form of answer. The answer shall be drawn so that it will advise the petitioner and the Court fully of the nature of the defense." (emphasis added). Fully advising the taxpayer includes recitation of the Code sections and theories on which the Commissioner relies. [8]
*29 Although the most appropriate times to advise the taxpayer of the Commissioner's theories to sustain an assessment would be first in the notice of deficiency and then in the Commissioner's answer, we do not hold that the Commissioner necessarily loses his right to pursue a theory or Code section that is not specifically raised before or at trial. The basic consideration is whether the taxpayer is surprised and disadvantaged when the Commissioner has failed to plead [section] 482. Commissioner v. Chelsea Products, supra at 197 F.2d 624; Nat Harrison Associates, Inc., supra42 T.C. at 617; Burrell Groves, Inc. 16 T.C. 1163, 1169 (1951). However, the longer the Commissioner delays in not expressly advising the taxpayer of the intended theories, the more reason there is to conclude that the taxpayer has not received fair notice and has been substantially prejudiced so as to deny the Commissioner consideration of theories raised for the first time in post trial briefs. The Commissioner may avoid this uncertainty and discharge his duty of informing the taxpayer by expressly notifying the taxpayer of the intended theories *30 in the deficiency notice and the Commissioner's answer. [Emphasis added; footnotes from original text.] We will now examine the record in this case in light of Transport Mfg. & Equipment Co., supra.
In the statutory notice of deficiency mailed to petitioners, the Commissioner disallowed petitioner's payment to Mr. Hoffman with the following explanation: It is determined that the claimed deduction of $ 100,000 as O'Heron-Platzer Trust Management Fee is unallowable as an ordinary deduction because the amount is a part of $ 200,000 representing the purchase of a third-party joint/venturer's share of the profits from the sale of that shown as the Michigan [Mardigian] Property. (See adjustment "C" for computation of corrected gain from the sale of said property.) Accordingly, your 1974 taxable income is increased $ 100,000. Alternately, it is determined that the claimed deduction of $ 100,000 is unallowable as an ordinary deduction because the amount is part of $ 200,000 representing a cost of the sale of that shown as the Michigan [Mardigian] Property. Respondent did not plead any additional grounds for the disallowance of the deduction in his answer *31 nor did he move to file an amended answer for such purpose. In his trial memorandum tendered to this Court prior to trial, respondent framed the Mardigian property issue to be presented as follows: 1. Whether $ 200,000.00 paid in 1974 by Clarence J. O'Heron and Peter J. Platzer to a corporation wholly owned by one Ralph Hoffman is deductible ($ 100,000.00 by each O'Heron and Platzer) under I.R.C. sec. 162 as compensation paid for Mr. Hoffman's building management services performed over a 13 month period; or rather, as respondent contends, the $ 200,000.00 represents the nondeductible purchase of Mr. Hoffman's interest in a joint-venture known as the "Mardigian transaction." Counsel for the parties made no opening statements in the Platzer trial as to the Mardigian property issue but referred to the opening statements they made as to that issue in the O'Heron trial. Counsel for respondent, after reciting the facts on the Mardigian property issue as he saw them, described respondent's position as follows: It's respondent's contention that the $ 200,000.00 was simply the purchase of Mr. Hoffman's interest in the profits of the venture, and a capital *32 expense. Alternatively, if the $ 200,000.00 did not represent the purchase of Mr. Hoffman's interest, it was nothing more than a finder's fee or a commission paid to him for his part in locating the property and disposing of it, again, a cost of sale and a capital expense. Under no circumstances can the $ 200,000.00 be compensation for the modest amount of management services which Mr. Hoffman performed with respect to the building itself. Your Honor, because of the manner in which these parties have dealt, through oral contracts, through closely held corporate entities, through trusts, it's somewhat difficult for respondent to say just exactly what the payment was but it is not difficult to say what the payment was not. And it was not compensation for Ralph Hoffman's management services over this thirteen-month period, a period in which the property itself generated substantial losses. The only way petitioners can prevail is if they establish that the payment represented compensation, and reasonable compensation, for Mr. Hoffman's management services. And the evidence will clearly show that this was not the case. To sum up respondent's theories at the time the trial began, *33 they were that the $ 200,000 payment to Hoffman did not represent compensation for management services rendered but, instead, represented a payment for Hoffman's share of the proceeds from the sale of the Mardigian property or, alternatively, represented a cost of sale of the property. As counsel for respondent stated in his opening statement, "The only way petitioners can prevail is if they establish that the payment represented compensation, and reasonable compensation, for Mr. Hoffman's management services." The record discloses nothing to indicate that petitioners' counsel in both cases, respondent's counsel, or the Court, thought the issues to be anything different as the trial progressed. At the conclusion of the trials, counsel for respondent made no oral motion to conform the pleadings to the proof, nor did he ever file any such motion. The parties briefed the Mardigian property issue in the O'Heron case. In his opening brief respondent, consistent with the first ground in the statutory notice of deficiency, his attorney's trial memorandum and his attorney's opening statement, stated in the "Points Relied Upon" section: "It is respondent's position that petitioner, *34 Platzer and Hoffman were co-joint venturers, and that the $ 200,000.00 was for the purchase of Hoffman's interest, a capital expense." In addition, however, for the first time, respondent added the following theory: Furthermore, even if the Court were to determine that Hoffman was not a co-joint venturer, but only an employee of petitioner and Mr. Platzer, the amount paid for his services is not deductible as an ordinary and necessary business expense. The record clearly shows that the services performed by Mr. Hoffman were directly connected to the renovation of the building, necessary to make it suitable for rental use. The amount paid for such services must be capitalized, [citing Acer Realty, supra]. At no time previous to this had respondent brought to the attention of petitioners' counsel or the Court, the opinion of this Court or the Court of Appeals for the Eighth Circuit, in Acer Realty, supra. Respondent made no argument on brief that the payment was a cost of sale. Counsel for petitioners, at no time prior to filing their reply brief, indicated any knowledge of the new theory raised by respondent and did not cite Acer Realty, supra, *35 in their opening brief. In their reply brief, however, they argue that respondent's new theory was untimely because it was raised for the first time on brief. In our opinion, we agreed with petitioners and held that respondent's new theory was untimely and would not be considered. In his motion for reconsideration respondent argues that the new theory he advanced for the first time on brief was not a new issue under the rationale of Acer Realty, supra.
The following summarizes the vacillations in respondent's theories: Statutory Notice
1. Cost of acquiring Hoffman's interest in profits from sale of Mardigian property; 2. Cost of sale. Trial Memorandum
1. Cost of acquiring Hoffman's interest in profits from sale of Mardigian property. Opening Statement
1. Cost of acquiring Hoffman's interest in profits from sale of Mardigian property; 2. Finder's fee or commission, i.e., cost of sale. Brief
1. Cost of acquiring Hoffman's interest in profit from sale of Mardigian property; 2. Services performed by Hoffman were connected with the renovation of the building and were, therefore, capital in nature. If counsel *36 for respondent had moved to conform the pleadings to the proof at the conclusion of the trial, and if counsel for petitioners had objected we would have had the flexibility to permit petitioners to offer additional evidence or take other appropriate steps to protect petitioners' rights. We hold, therefore, that Acer Realty, supra, is distinguishable, that the issues raised on brief were not embodied in the issues raised before the Court prior to and at trial, that petitioners did not have fair warning of the new issue, and under the rationale of Transport Mfg. & Equipment Co., supra, the issues raised for the first time on brief were untimely and should not be considered. Having decided that the issue will not be considered, it is not appropriate to examine the cases which respondent cited in his motion which do not relate to the procedural question. An appropriate order will be entered. Footnotes
1. McKean v. Commissioner, T.C. Memo. 1981-670; Wildes v. Commissioner, T.C. Memo. 1980-298; Wilson v. Commissioner, T.C. Memo. 1980-288↩. 2. All section references are to the Internal Revenue Code of 1954, as amended.↩
6. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212↩ (1933); C.I.R. v. Riss, 374 F.2d at 166. 7. In Commissioner v. Chelsea Products, 197 F.2d 620, 624↩ (3d Cir. 1952), the court said that "[t]he Taxpayer can hardly shoulder its burden if it does not know… which transactions or group of transactions the Commissioner has determined to have resulted in distortions of true net income."
8. Of course, if a certain Code section, regulation or theory has not been specifically raised in the notice of deficiency, in the pleadings, or at trial and if there is an absence of surprise on the taxpayer's part, the taxpayer has no reason to complain. Nat Harrison Associates, Inc., 42 T.C. 601, 617↩ (1964).