WILLIAM BRYEN CO., INC. AND SUBSIDIARIES, PETITIONER
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24105-83.          Filed September 29, 1987.

*Arthur A. Dipadova* and *Kevin M. Covert*, for the petitioner.
*David M. Kuchinos*, for the respondent.

OPINION

WELLS, *Judge*:* Respondent determined the following deficiencies in petitioner's income taxes:

| TYE Jan. 31— | Deficiency[1] |
|---|---|
| 1974 | $6,133.39 |
| 1975 | 34,854.15 |
| 1976 | 153,059.25 |

After concessions, the issues we are asked to decide are: (1) Whether petitioner's intentional overfunding of both of its money purchase pension plans results in the disqualification of the plans under section 401(a);[2] (2) if petitioner's pension plans are not qualified under section 401(a), whether petitioner is entitled to deductions under section 404(a)(5) for contributions made under one of its pension plans to the separate accounts of plan participants; and (3) whether respondent raised, in a fair manner, the issue of whether the intentional overfunding by petitioner under its pension plan during the plan year ended January 31, 1977, results in the disqualification of the plan.

This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioner was incorporated under the laws of New Jersey, and had its principal place of business in Camden, New Jersey, at the time the petition in this case was filed. Petitioner is the parent corporation of an affiliated group of corporations, and uses a fiscal year ending January 31 as

---

*By order of the Chief Judge, this case was assigned to Judge Thomas B. Wells for decision and opinion.

[1] These deficiencies arose from the disallowance by respondent of petitioner's deductions for contributions made by petitioner during its taxable years ended Jan. 31, 1976, and Jan. 31, 1977.

[2] All section and Code references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

its annual accounting period for tax purposes. Bryen, Bryen & Co. (B.B. & Co.) is a wholly owned subsidiary of petitioner, and is a member of petitioner's affiliated group.

On August 15, 1972, B.B. & Co., then named Cherry Hill Management Co., adopted what became the Bryen, Bryen & Co. Pension Plan (B.B. & Co. Plan). The B.B. & Co. Plan was a target benefit plan[3] and was considered a money purchase pension plan.[4] Under the B.B. & Co. Plan, separate accounts were maintained for each employee who was a plan participant, and there was full and immediate vesting of amounts credited to the accounts of the plan participants. The B.B. & Co. Plan used a plan year ending on January 31. On May 18, 1973, respondent issued a favorable determination letter with respect to the qualified status of the B.B. & Co. Plan[5] under section 401(a).

For the plan year ended January 31, 1976, petitioner determined that the contribution required according to the terms of the B.B. & Co. Plan was $291,634, which petitioner contributed and allocated to the accounts of the plan participants.

During the plan year ended January 31, 1976, petitioner regularly made monthly contributions under the B.B. & Co. Plan. The amounts of these contributions varied with petitioner's financial ability to make them. Petitioner's annual liability under the B.B. & Co. Plan for the fiscal years ended January 31, 1974, 1975, and 1976, was $199,441, $218,781, and $291,634, respectively. Because petitioner's business is cyclical in nature, which often resulted in petitioner's being in a "limited cash position," in

---

[3] A "target benefit plan" is generally defined as a plan under which the employer selects a "target benefit" he wishes to provide to employees upon their retirement, and the required annual contribution is actuarially determined based upon the targeted benefit. The targeted benefit is not promised to participants. The employees' actual pension is therefore based upon the amount in their accounts. See H. Rept. 93-1280 (Conf.)(1974), 1974-3 C.B. 415, 505.

[4] The parties have agreed that the B.B. & Co. Plan is a money purchase pension plan for purposes of this case. A money purchase pension plan does not promise the specific amount of benefits that participants are to receive, but instead provides that they are to receive "whatever benefits the funds in the plan will purchase at the date such benefits are to begin." S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) 80, 103. See also H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 295.

[5] The stipulation of facts and various letters between the parties to this case refer to the status of the pension *plans*, as opposed to the status of the pension plan *trusts* as referred to by sec. 401(a). The parties have submitted separate plan documents and separate trust documents. For purposes of this opinion, the term "plan" sometimes includes the trust created pursuant to the plan.

1975 petitioner inquired of its pension consultant and actuary whether it would be permissible to make contributions under the plan in excess of its annual liability. It was petitioner's intention to make contributions in excess of its liability under the plan when possible to ensure that the plan was properly funded and because of concern over the newly enacted minimum funding standards, which would become effective in the following plan year[6] (these contributions that were intentionally made in excess of plan liabilities are hereinafter referred to as advance contributions). Petitioner was advised by the actuary that advance contributions were permissible if kept within reasonable limits, and that limiting any advance contributions to "one year's contribution would be reasonable." Petitioner did not claim a deduction for contributions that represented advance contributions, but limited its deduction to the actuarial liability under the plan as determined by petitioner's actuary.

For the plan year ended January 31, 1976, the B.B. & Co. Plan had an actuarial liability of $291,634. The B.B. & Co. Plan had assets having a market value of $1,337,589, and had trust liabilities of $1,070,204; the excess of assets over liabilities was therefore $267,385. As of January 31, 1976, contributions made in excess of petitioner's liability under the B.B. & Co. Plan for that year amounted to $267,385. Of that amount, $189,539 was attributable to advance contributions,[7] and was not allocated to the separate accounts of plan participants.[8]

---

[6]The minimum funding standards were enacted under sec. 1013(a) of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, 914 (this section of ERISA added sec. 412 to the Code). Sec. 1013(a), ERISA, was applicable to plan years beginning after Dec. 31, 1975, for plans in existence on Jan. 1, 1974. Sec. 1017(b), ERISA. The minimum funding standards therefore were not applicable to the plan year of the B.B. & Co. Plan ended Jan. 31, 1976 (which began on Feb. 1, 1975).

[7]The remainder of the excess contributions under the B.B. & Co. Plan resulted from "an agreed upon disallowance of officers' salaries." The parties represent that this remainder amount was $77,826. Accepting as accurate the parties' stipulations as to the value of the trust assets, the amount of trust liabilities, and the amount of advance contributions made by petitioner, the amount of the remainder would be $77,846. We leave the computation of the exact amounts of these items for the Rule 155 computation required hereunder.

[8]The failure to allocate was not specifically set forth in the stipulation of facts. Nevertheless, the stipulation of facts does state that these excess contributions were allocated to plan participants' accounts during the plan year ended Jan. 31, 1978. Based upon this statement in the stipulation of facts, we find that the advance contributions made by petitioner were not allocated to the accounts of plan participants (i.e., these amounts were held in suspense) during the years in issue.

On January 28, 1977, petitioner adopted the William Bryen Co. Money Purchase Plan (W.B. Co. Plan). Similar to the B.B. & Co. Plan, the W.B. Co. Plan was a money purchase pension plan (although it was not a target benefit plan), and used a plan year ending January 31.

As of January 31, 1977, the B.B. & Co. Plan was merged into the W.B. Co. Plan. As a result of the merger (or "pooling") of the two plans, the W.B. Co. Plan had assets with a market value of $2,070,865 and trust liabilities of $1,827,449. Thus, there was an excess of assets over liabilities of $243,416.[9] The excess amount was attributable to advance contributions, and was not allocated to the separate accounts of plan participants.[10]

From February 1, 1977, through January 31, 1978, the funds under the W.B. Co. Plan in the amount of $243,416, which represented advance contributions, were completely absorbed. Therefore, as of January 31, 1978, there were no funds in excess of plan liabilities that were attributable to advance contributions made by petitioner in the W.B. Co. Plan trust. Amounts attributable to advance contributions were allocated to plan participants' accounts pursuant to relevant plan provisions during the plan year ended January 31, 1978.[11]

On May 27, 1983, respondent (1) revoked the favorable determination letter that had been issued with respect to the B.B. & Co. Plan for the plan year ended January 31, 1976; (2) issued a final adverse determination letter with regard to the W.B. Co. Plan; and (3) issued a statutory notice of deficiency that disallowed petitioner's deductions for all contributions made under the B.B. & Co. Plan during petitioner's taxable year ended January 31, 1976, and disallowed petitioner's deductions for all contributions made under the W.B. Co. Plan during petitioner's taxable year

---

[9]The parties' stipulation in this case represents that the excess of assets over liabilities attributable to "advance funding" was $243,236. Accepting as accurate the parties' stipulations concerning the value of the trust assets and the amount of trust liabilities, the excess amount would be $243,416. We leave the computation of the exact amount of these items for the Rule 155 computation required hereunder.

[10]See note 8 *supra* (concerning petitioner's allocation of advance contributions).

[11]See note 8 *supra* (concerning petitioner's allocation of advance contributions).

The stipulation of facts also does not specify whether petitioner made advance contributions under *both* plans in issue or only under the B.B. & Co. Plan, or whether petitioner allocated the funds attributable to advance contributions in 1978 pursuant to the B.B. & Co. Plan provisions, the W.B. & Co. Plan provisions, or both plans' provisions.

ended January 31, 1977. In response to these determinations by respondent, pursuant to section 7476, petitioner filed petitions with this Court for declaratory judgments concerning the qualified status of both the B.B. & Co. Plan and the W.B. Co. Plan. Subsequently, on August 15, 1983, petitioner also filed a petition with this Court for a redetermination of the deficiencies set forth in respondent's statutory notice of deficiency. On October 20, 1983, respondent moved to dismiss the declaratory judgment cases, arguing that the status of both the B.B. & Co. Plan and the W.B. Co. Plan under section 401(a) would be determined in the deficiency action. On May 10, 1984, both declaratory judgment actions were dismissed.

## Qualification of Pension Plans

The first issue we are asked to decide is whether the advance contributions made by petitioner under the B.B. & Co. Plan and the W.B. Co. Plan result in the failure of the trusts under those plans to qualify under section 401(a) for the plan years in issue. We first briefly summarize the relevant sections of the Code and Income Tax Regulations before discussing the parties' arguments.

Section 401(a) prescribes requirements for the qualification of a trust that is part of a stock bonus, pension, or profit sharing plan. If a trust that is part of one of those types of plans is qualified, (1) the employer may deduct contributions to the trust as soon as they are paid, pursuant to section 404(a), subject to certain limitations; (2) the trust is exempt from income tax pursuant to section 501(a); and (3) the beneficiaries of the trust are not required to pay income taxes on contributions to the trust until they actually receive those contributions—even though the contributions may have become nonforfeitable—pursuant to section 402(a)(1).

The introductory language of section 401(a) provides, in relevant part, that a "trust created or organized * * * and forming part of a * * * *pension* * * * *plan* of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust" if certain requirements are satisfied. (Emphasis supplied.) Section 1.401-

1(b)(1)(i), Income Tax Regs.,[12] purports to define the term "pension plan," as that term is used in the Code. That section of the regulations provides that a pension plan is a "plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement." Section 1.401-1(b)(1)(i), Income Tax Regs., then provides that a money purchase pension plan will be considered a pension plan for purposes of section 401(a) if employer contributions under the plan are "fixed without being geared to profits."

Respondent argues that the advance contributions made by petitioner should result in the disqualification of the B.B. & Co. Plan and W.B. & Co. Plan trusts under section 401(a) for the plan years in issue, because the advance contributions made under the plans were not fixed without being geared to profits, as required by section 1.401-1(b)(1)(i), Income Tax Regs.[13] Petitioner contends that the plans are not disqualified because there is no judicial, regulatory, or statutory support for respondent's argument, and that respondent's position is inconsistent with section 404(a)(1)(D). We agree with respondent that petitioner's contributions under the pension plans were not fixed without being geared to profits, and that the plan trusts therefore fail to qualify under section 401(a).[14]

---

[12]The relevant portion of sec. 1.401-1(b)(1)(i), Income Tax Regs., provides as follows:

(b) *General rules.* (1)(i) A pension plan within the meaning of section 401(a) is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement. Retirement benefits generally are measured by, and based on, such factors as years of service and compensation received by the employees. The determination of the amount of retirement benefits and the contributions to provide such benefits are not dependent upon profits. * * * *A plan designed to provide benefits for employees or their beneficiaries to be paid upon retirement or over a period of years after retirement will, for the purposes of section 401(a), be considered a pension plan if* the employer contributions under the plan can be determined actuarially on the basis of definitely determinable benefits, or, as *in the case of money purchase pension plans, such contributions are fixed without being geared to profits.* [Emphasis supplied.]

This section of the regulations applies to both plans and plan years in issue. See sec. 1.401(a)-1(b), Income Tax Regs.

[13]We need not address respondent's other arguments concerning the qualified status of the pension plans under sec. 401(a) because of our determination that the contributions made under the pension plans were not "fixed without being geared to profits."

[14]While we agree with respondent concerning his argument under sec. 1.401-1(b)(1)(i), Income Tax Regs., we note that respondent relied primarily on revenue rulings involving excess contributions under pension plans that were determined to have violated the exclusive benefit

It is our task in this case to construe the regulatory requirement that contributions be fixed without being geared to profits. Respondent argues that through the use of the term "fixed," the regulation prohibits an employer from exercising discretion over the amount of contributions that will be made under a money purchase pension plan, and that the language "without being geared to profits" prohibits an employer from varying annual contributions under a money purchase pension plan depending upon the employer's profitability during a plan year.

The meaning of the regulatory language requiring that employer contributions made under a money purchase pension plan be fixed without being geared to profits is not clear. The word "fixed" does suggest, however, that contributions must not be "subject to change or fluctuation" or must be "established definitely." Websters Third International Dictionary 861 (1981). Thus, we read section 1.401-1(b)(1)(i), Income Tax Regs., to require that money purchase pension plan provisions establish the level of employer contributions under the plan. We also read that section as a prohibition against granting the employer any discretion to vary the level of contributions so established. Moreover, once the level of employer contributions under the plan is established by the plan provisions, the employer should not then be able to intentionally contribute an amount in excess of that established level. To allow the employer to make advance contributions would be inconsistent with the language of the regulation. The use of the word "fixed" does not suggest, as petitioner posits, that it was meant to serve only as a requirement that the employer contribute a *minimum level* of contributions. While the regulatory language in issue could have been clearer,[15] we read it to mean that plan provisions must establish the employer's obligation under the plan in a manner that does not grant the employer the authority to exercise discretion when making contributions. We also read the regulatory language to prohibit the employer from intentionally making contribu-

---

rule under sec. 401(a), rather than sec. 1.401-1(b)(1)(i), Income Tax Regs. The exclusive benefit rule is not in issue in this case.

[15]Future litigation might be avoided by issuing regulations that more clearly define the terms "pension plan," "money purchase pension plan," and "target benefit pension plan."

tions in excess of the employer's liability under the plan.[16] Obviously, the other part of the phrase in issue, "without being geared to profits," modifies the term "fixed" and means that the plan provisions that establish the employer's liability may not be geared to the employer's profits.

Our reading of the regulatory language in issue is supported by respondent's own prior construction of the regulatory section. While it is well-settled that revenue rulings merely state respondent's position with respect to specific fact situations, and are not binding on this Court (*Stubbs, Overbeck & Associates, Inc. v. Commissioner*, 445 F.2d 1142, 1146-1147 (5th Cir. 1971); *Stark v. Commissioner*, 86 T.C. 243, 250-251 (1986), and cases cited therein), the Supreme Court has indicated that an agency's construction of its own regulations is due considerable respect (e.g., *Jewett v. Commissioner*, 455 U.S. 305, 318 (1982); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 556 (1980); *Hanover Bank v. Commissioner*, 369 U.S. 672, 686-687 (1962)).

The Commissioner has issued several rulings since 1972 that have interpreted the word "fixed," as used in section 1.401-1(b)(1)(i), Income Tax Regs., by applying that section of the regulations to various plan formulae for determining the required annual contributions under the plans in issue in those rulings. See Rev. Rul. 74-385, 1974-2 C.B. 130; Rev. Rul. 73-379, 1973-2 C.B. 124; Rev. Rul. 72-302, 1972-1 C.B. 110.[17] In each of these rulings, the analysis focuses on

---

[16]We do not reach the questions of whether *intentional underfunding* of a money purchase pension plan or *unintentional underfunding* or *overfunding* of such a plan results in the disqualification of the plan. Respondent does indicate on brief, however, that only *intentional overfunding* of a money purchase pension plan results in a violation of the language in issue under sec. 1.401-1(b)(1)(i), Income Tax Regs.

Clarification of sec. 1.401-1(b)(1)(i), Income Tax Regs., would be of particular significance in light of the enactment of a law under ERISA (sec. 4971, I.R.C. 1954) imposing certain taxes for underfunding pension plans and the enactment of a law under the Tax Reform Act of 1986 (sec. 4972, I.R.C. 1986) imposing certain taxes for overfunding pension plans.

[17]Rev. Rul. 73-206, 1973-1 C.B. 142, revoked by Rev. Rul. 74-385, *supra*, involved a situation where employer contributions under a money purchase pension plan were geared to employee contributions under the plan. It was determined that the contributions of the employer were not "fixed" as required by sec. 1.401-1(b)(1)(i), Income Tax Regs. Rev. Rul. 74-385, *supra*, involved facts similar to the facts in Rev. Rul. 73-206, and concluded that the plan formula was not subject to the discretion of the employer, the requirements of sec. 1.401-1(b)(1)(i), Income Tax Regs., were satisfied, and Rev. Rul. 73-206 was revoked. See also H. Rept. 93-1280 (Conf.)(1974), 1974-3 C.B. 415, 452-453; H. Rept. 93-779 (1974), 1974-3 C.B. 244, 332-333; H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 325-326. (The various committees conclude that when employer contributions under money purchase pension plans are dependent

whether the plan formula for determining the required annual contribution gives the employer the authority to exercise discretion with respect to contributions under the plan. In fact, Rev. Rul. 74-385, *supra*, clearly states, "Thus, in a money purchase pension plan, if the contributions on behalf of each participant are made in accordance with a stipulated formula that is not subject to the discretion of the employer, the requirements of section 1.401-1(b)(1)(i) of the regulations are satisfied." These revenue rulings are consistent with our reading of the regulatory language in issue in this case, and they represent a consistent interpretation by the Internal Revenue Service of the regulations it administers.

Congress also has interpreted section 1.401-1(b)(1)(i), Income Tax Regs., consistent with our above reading of that section. The report of the Conference Committee, H. Rept. 93-1280, contains the following statement in a discussion of the minimum funding standards:[18]

> It is intended that plans generally are to be considered money purchase pension plans which meet the "definitely determinable" standard where the employer's contributions are fixed by the plan, even if the employer's obligation to contribute for any individual employee may vary based on the amount contributed to the plan in any year by the employee. For example, it is expected that a matching plan which provides that an employer will annually contribute up to 6 percent of an employee's salary, but that this contribution will be no more than the employee's own (nondeductible) contribution, will meet the "definitely determinable" criteria. *In this case, the employer's contributions are set by the plan, will not vary with profits, and cannot be varied by the employer's action (other than by a plan amendment).* (Of course, the plan must meet the nondiscrimination and other requirements of the Code to be qualified.) [H. Rept. 93-1280 (Conf.)(1974), 1974-3 C.B. 415, 453. Emphasis supplied. See also H. Rept. 93-770 (1974), 1974-3 C.B. 244, 332-333; H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 325-326. (These committee reports contain similar language to that contained in the report of the Conference Committee.)]

As noted, petitioner makes two arguments in this case concerning the qualified status of the B.B. & Co. Plan and

---

upon employee contributions under the plans, the plans are generally to be considered as meeting the "definitely determinable" standard.)

The above-cited revenue rulings contain almost no rationale for the determinations contained in those rulings. Those revenue rulings apparently are focusing on the plain meaning of the regulatory language under sec. 1.401-1(b)(1)(i), Income Tax Regs.

[18]The minimum funding standards are now contained in sec. 412. See note 6 *supra*.

the W.B. & Co. Plan under section 401(a). First, petitioner argues that there is no judicial, regulatory, or statutory support for respondent's argument in this case. As we have demonstrated above, however, the regulatory language in issue supports respondent's argument concerning advance contributions. We therefore disagree with petitioner's first argument.

Second, petitioner argues that respondent's argument is inconsistent with section 404(a)(1)(D),[19] which provides that contributions made by employers in excess of the amount deductible under section 404(a)(1) shall be deductible in succeeding taxable years "to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year under the * * * limitations [contained in section 404(a)(1)]." Petitioner further argues that section 404(a) does not indicate that a money purchase pension plan is disqualified when an employer makes advance contributions.

Section 404(a) provides, in relevant part, that contributions paid by an employer under a pension plan are not deductible under section 162 or 212, but instead are deductible under section 404 if certain limitations under section 404 are satisfied. If a pension trust is in issue, section 404(a)(1)[20] sets forth several limitations that must

---

[19]Sec. 404(a)(1)(D) provides as follows:

(D). CARRYOVER.—Any amount paid in a taxable year in excess of the amount deductible in such year under the foregoing limitations shall be deductible in the succeeding taxable years in order of time to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year under the foregoing limitations.

[20]For the plan year of the B.B. & Co. Plan ended Jan. 31, 1976, the relevant portion of sec. 404(a) provided the following limitations on deductions:

SEC. 404(a). GENERAL RULE —If contributions are paid by an employer to or under a * * * pension [plan], * * * such contributions * * * shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

(1) PENSION TRUSTS.—In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 501(a), in an amount determined as follows:

(A) an amount not in excess of 5 percent of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Secretary or his delegate upon periodical examinations at not less than 5-year intervals to be more than the amount reasonably necessary to provide the remaining unfunded cost of past and current service credits of all employees under the plan, plus

be satisfied before contributions are deductible under that section. The limitation under section 404(a)(1) that is relevant to our inquiry in the present case provides that a contribution under a pension trust is deductible "[i]n the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which *the trust is exempt under section 501(a)*." Sec. 404(a)(1); emphasis supplied. (The structure of sec. 404(a)(1) was different for each of the two

---

(B) any excess over the amount allowable under subparagraph (A) necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, or a level percentage of compensation, over the remaining future service of each such employee, as determined under regulations prescribed by the Secretary or his delegate, but if such remaining unfunded cost with respect to any 3 individuals is more than 50 percent of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years, or

(C) in lieu of the amounts allowable under subparagraphs (A) and (B) above, an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Secretary or his delegate, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount not in excess of 10 percent of the cost which would be required to completely fund or purchase such pension or annuity credits as of the date when they are included in the plan, as determined under regulations prescribed by the Secretary or his delegate, except that in no case shall a deduction be allowed for any amount (other than the normal cost) paid in after such pension or annuity credits are completely funded or purchased.

For the plan year of the W.B. Co. Plan ended Jan. 31, 1977, the relevant limitations on deductions under sec. 404(a) were modified by sec. 1013(c) of ERISA to read as follows:

(1) PENSION TRUSTS.—

(A) IN GENERAL.—In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 501(a), in an amount determined as follows:

(i) the amount necessary to satisfy the minimum funding standard provided by section 412(a) for plan years ending within or with such taxable year (or for any prior plan year), if such amount is greater than the amount determined under clause (ii) or (iii) (whichever is applicable with respect to the plan),

(ii) the amount necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, or a level percentage of compensation, over the remaining future service of each such employee, as determined under regulations prescribed by the Secretary or his delegate, but if such remaining unfunded cost with respect to any 3 individuals is more than 50 percent of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years,

(iii) an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Secretary or his delegate, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount necessary to amortize such credits in equal annual payments (until fully amortized) over 10 years, as determined under regulations prescribed by the Secretary or his delegate.

In determining the amount deductible in such year under the foregoing limitations the funding method and the actuarial assumptions used shall be those used for such year under section 412, and the maximum amount deductible for such year shall be an amount equal to the full funding limitation for such year determined under section 412. [88 Stat. 921.]

plans in issue, but the relevant language was the same.) See also sec. 1.404(a)-3(a), Income Tax Regs. (repeating the same requirement).

As we have already discussed, in order for a pension trust to be exempt under section 501(a), the plan trust must satisfy section 401(a). The regulations under section 401(a) (e.g., sec. 1.401-1(b)(1)(i), Income Tax Regs.) set forth certain requirements that must be satisfied in order to qualify a pension plan and its related trust under section 401(a). Section 404(a)(1) therefore makes qualification under section 401(a) and the regulations under section 401(a) a threshold issue for purposes of determining whether an employer may deduct, under section 404(a)(1), contributions paid under a pension plan. If the plan trust is not qualified under section 401(a), contributions paid to the plan trust are not deductible under section 404(a)(1), and section 404(a)(1)(D) never applies to amounts contributed to that plan trust.

Furthermore, accepting respondent's position in this case would not render section 404(a)(1)(D) superfluous, as petitioner seems to suggest; it is clear that not all contributions in excess of the limitations contained in section 404(a)(1) are due to intentional contributions made by employers in excess of the employers' liabilities under money purchase pension plans. We therefore reject petitioner's argument concerning section 404(a)(1)(D).

Based upon the foregoing analysis, we hold that section 1.401-1(b)(1)(i), Income Tax Regs., requires that a money purchase pension plan contain provisions that establish the level of employer contributions required under the plan in a manner that does not grant the employer authority to exercise discretion when making contributions, and is not related to the profits of the employer. We also hold that section 1.401-1(b)(1)(i), Income Tax Regs., prohibits an employer from exercising discretion by intentionally making contributions that exceed the liability established under the plan.

In the present case, provisions contained in the B.B. & Co. Plan and the W.B. & Co. Plan fixed petitioner's liability under the plans. Nevertheless, petitioner made advance contributions under the plans and, in effect, maintained

suspense accounts for these advance contributions.[21] Under these facts, petitioner has exercised the very discretion we read section 1.401-1(b)(1)(i), Income Tax Regs., to prohibit. We therefore hold that both the B.B. & Co. Plan and the W.B. & Co. Plan were disqualified for the plan years in issue.

*Section 404(a)(5)*

The next issue we are asked to decide is whether petitioner is entitled to deductions under section 404(a)(5) for contributions that were made under the B.B. & Co. Plan and allocated to the separate accounts of plan participants.[22]

If an employer makes contributions under a money purchase pension plan that is not qualified under section 401(a), the employer is nevertheless entitled to a deduction for those contributions if the requirements of section 404(a)(5)[23] are satisfied. Sec. 404(a) and sec. 404(a)(5); sec. 1.404(a)-12(a), sec. 1.404(a)-12(b)(1), and sec. 1.404(a)-12(b)(3), Income Tax Regs.

Under section 404(a)(5), a deduction by the employer is postponed until the taxable year of the employer in which, or with which, ends the taxable year of an employee in which an amount attributable to the employer's contribu-

---

[21]Petitioner might have reduced the potential for litigation and satisfied its concern by using an escrow account that was separate from the pension plans. Petitioner might also have requested under sec. 412(d) that the Secretary waive the minimum funding requirements of sec. 412(a) in a case of "substantial business hardship."

[22]Petitioner did not provide us with evidence with respect to the requirements of sec. 404(a)(5) for purposes of the contributions under the W.B. Co. Plan for the plan year in issue. Moreover, petitioner did not argue in his brief that sec. 404(a)(5) applied to the plan year in issue for the W.B. Co. Plan. We treat the omissions as a concession by petitioner with respect to the W.B. Co. Plan. See Rules 142(a), 149(b).

[23]Sec. 404(a) provides, in relevant part, as follows:

SEC. 404(a). GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

\*     \*     \*     \*     \*     \*     \*

(5) OTHER PLANS.—If the plan is not [a qualified plan under section 401(a)], in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan, but, in the case of a plan in which more than one employee participates only if separate accounts are maintained for each employee.

tion is includable in the employee's gross income as compensation.[24] Sec. 1.404(a)-12(b)(1), Income Tax Regs. Section 404(a)(5) also requires that separate accounts be maintained for each employee if more than one employee participates in the plan. Section 1.404(a)-12(b)(3), Income Tax Regs., interprets the "separate accounts" requirement as follows:

(3) *Separate accounts for funded plans with more than one employee.* In the case of a funded plan under which more than one employee participates, no deduction is allowable under section 404(a)(5) for any contribution unless separate accounts are maintained for each employee. The requirement of separate accounts does not require that a separate trust be maintained for each employee. However, a separate account must be maintained for each employee to which employer contributions under the plan are allocated, along with any income earned thereon. In addition, such accounts must be sufficiently separate and independent to qualify as separate shares under section 663(c). Nothing shall preclude a trust which loses its exemption under section 501(a) from setting up such accounts and meeting the separate account requirement of section 404(a)(5) with respect to the taxable years in which such accounts are set up and maintained.

Focusing on section 1.404(a)-12(b)(3), Income Tax Regs., respondent states on brief, "Because the quoted regulation states that no deduction is allowable for '*any contribution*' unless separate accounts are maintained to which contributions are allocated, petitioner's failure to allocate the excess funding to participant accounts in 1976 results in noncompliance with [that regulation]." (Emphasis in original.)

Respondent's reading of section 1.404(a)-12(b)(3), Income Tax Regs., is strained in that it would disallow a deduction for amounts paid under an employee plan because a suspense account was maintained under the plan. The relevant portion of section 1.404(a)-12(b)(3), Income Tax Regs., first requires that a separate account be maintained for each employee. As we read the first sentence of the regulation, the separate account requirement can be satisfied even if a suspense account is maintained under the plan. The third sentence of the quoted regulation states that "a separate account must be maintained for each employee to which employer contributions are allocated,

---

[24]The rule is subject to other requirements under sec. 404(a) that are not in issue in this case.

along with any income earned thereon." We do not read the third sentence to require that *all* employer contributions be made to the separate accounts. That sentence, instead, suggests that the employer contributions *for which the employer is claiming a deduction* must be allocated to the separate accounts. Since separate accounts were maintained under the B.B. & Co. Plan for each employee participating in the plan, and petitioner only claimed deductions for the required contributions that were allocated to the separate accounts under that plan, we hold that petitioner is entitled to deductions under section 404(a)(5) for its contributions to those separate accounts.[25]

## Notice

On July 13, 1979, respondent sent a letter to petitioner stating that a proposed determination was made that the W.B. Co. Plan was not qualified under section 401(a) for the plan year ended January 31, 1977 (this letter is hereinafter referred to as the 30-day letter). The following grounds were given by respondent for the proposed determination:

(1) Bryen, Bryen Co. * * * effected a transfer of the assets of the Bryen, Bryen Co. Pension Plan to the trust under your Money Purchase Pension Plan where they are held for the Bryen, Bryen Co. participants in segregated accounts until an event calling for distribution occurs.

\* \* \* \* \* \* \*

The transfer of assets from the Bryen, Bryen Co. Pension Plan to your plan is in effect a pooling of assets of the plans (trusts). Revenue Ruling 56-267, CB 1956-1, 206, specifies conditions under which pooling of trusts is permitted if the pooled trust is to qualify under section 401(a) of the Internal Revenue Code and be exempt from tax under section 501(a).

One of those conditions is that the pooled trust expressly limit participation to Pension and Profit Sharing Trusts which are exempt under section 501(a) by reason of qualifying under section 401(a) of the Code.

The presence in your trust of assets of the non-qualified * * * Bryen, Bryen Co. Pension Plan Trust violates that condition.

(2) *Information submitted by Paul A. Tanker & Associates (Your Representative) indicates that there was advanced funding of $243,236 with respect [to] this plan.*

---

[25]We find that petitioner has met his burden of proof on this issue, and since respondent does not argue in his brief that the other requirements of sec. 404(a)(5) have not been satisfied with respect to the B.B. & Co. Plan, we treat the omission of that argument as a concession by respondent with respect to those other requirements.

*That amount* \* \* \* constitutes a significant contingency reserve. Revenue Ruling 70-421, CB 1970-2 and Revenue Ruling 60-33 indicate that *establishment of such reserve adversely affects the qualification of the plan under section 401(a) and [the] exempt status of the trust under section 501(a) of the code.*
[Emphasis supplied.]

On May 30, 1980, respondent sent a letter to petitioner stating that technical advice was being requested from respondent's National Office, and enclosing a copy of the request for technical advice (hereinafter sometimes referred to as the request). The request for technical advice contained essentially the same arguments made by respondent in the 30-day letter that was issued with respect to the W.B. Co. Plan.[26] The request also set forth arguments that had been made by petitioner in response to respondent's arguments.[27]

On October 8, 1981, respondent sent a copy of the Technical Advice Memorandum (TAM) to petitioner. The TAM indicates that the existence of an excess funds account results in the disqualification of the plan maintaining the account.

On May 27, 1983, respondent sent a final adverse determination letter (final adverse letter) to petitioner concerning the W.B. Co. Plan.[28] The final adverse letter provided that the W.B. Co. Plan was not qualified because of (1) the merger of the B.B. & Co. Plan (which respondent determined was not qualified) into the W.B. Co. Plan and (2)

---

[26]The request contained references to excess funds held under the W.B. Co. Plan.

[27]The relevant portion of the request specifically provided as follows:

The taxpayer [petitioner] disagreed with the District determination for the following reasons:

1. The excess contributions were not made to avoid tax.

2. The excess contributions were made for a bona fide purpose; namely to insure that plan would be properly funded.

3. The excess contributions were made to avoid the possibility of underfunding penalties of Section 412.

As a basis for the above argument the taxpayer alleges:

1. That Rev. Rul. 60-33 and Rev. Rul. 70-421 should not be applied because such rulings are not backed by statute or judicial decision.

2. That their situation is similar and therefore should be governed by the 5th Circuit Decision in *Texas Instruments vs. United States*, 76-1 USTC 9312. In this case a company had accumulated excess funding which was in excess of 50% of the fund's assets. Such advance or excess funding was created because of the change in actuarial assumption created when new actuaries were hired. The Court allowed not only the entire excess as a deduction, but also stated that such excess did not adversely effect the qualification of the plan.

[28]Separate final adverse determination letters were issued concerning the B.B. & Co. Plan and the W.B. & Co. Plan.

the establishment of an excess funds account with respect to the W.B. Co. Plan.[29]

A statutory notice of deficiency (hereinafter sometimes referred to as the statutory notice) was also sent to petitioner on May 27, 1983. The statutory notice stated, in pertinent part, that an adverse determination was being made concerning the qualified status of the W.B. Co. Plan because "its trust [held] assets of [the] nonqualified [B.B. & Co.] plan."[30] Respondent failed to specifically base the determination of deficiencies upon the argument that the maintenance of an account for advance contributions under the W.B. Co. Plan caused the W.B. Co. Plan to be disqualified under section 401(a). Respondent also failed to specifically assert in his answer that the W.B. Co. Plan improperly maintained an account for advance contributions during the plan year ended January 31, 1977.

The issue before us is whether respondent has failed to give petitioner proper notice of respondent's intention to raise the issue of whether the maintenance of an account for advance contributions by petitioner under the W.B. Co. Plan for the plan year ended January 31, 1977, results in

---

[29]The relevant portion of the final adverse letter specifically provided as follows:

"(1) Bryen, Bryen Co. * * * effected a transfer of the assets of the Bryen, Bryen & Co. Pension Plan to the trust under your Money Purchase Pension Plan where they are held for the Bryen, Bryen Co. participants in segregated accounts until an event calling for distribution occurs.

"It has been proposed by this office that the prior qualification of the Bryen, Bryen & Co. Pension Plan under section 401(a) of the Internal Revenue Code be revoked commencing with its tax year beginning February 1, 1975. * * *

"The transfer of assets from the Bryen, Bryen Co. Pension Plan to your plan is in effect a pooling of the Plans (trusts). Ruling 56-267, CB 1956-1, 206, specifies conditions under which pooling of trusts is permitted if the pooled trust is to qualify under section 401(a) of the Internal Revenue Code. * * *

"One of those conditions is that the pooled trust expressly limit participation to Pension and Profit Sharing Trusts which are exempt under section 501(a) by reason of qualifying under section 401(a) of the Code.

"The presence in your trust of assets of the non-qualified * * * Bryen, Bryen Co. Pension Plan * * * violates that condition.

"(2) *Information submitted by Paul A. Tanker & Associates indicates that there was advanced funding of $243,236 with respect [to] this plan.*

"*That amount * * * constitutes a significant contingency reserve.* Revenue Ruling 70-421, CB 1970-2 and Revenue Ruling 60-33 indicate that *establishment of such reserve adversely affects the qualification of the plan under section 401(a) and [the] exempt status of the trust under section 501(a) of the code.*"

[Emphasis supplied.]

The above-quoted language from the final adverse letter is essentially identical to the language used by respondent in the 30-day letter.

[30]The "pooled trust" argument was not made by respondent on brief.

the plan's failing to qualify under section 401(a) for that plan year. Petitioner argues that because respondent did not raise in the statutory notice of deficiency or his answer the issue concerning the existence of advance contributions under the W.B. Co. Plan as it relates to that plan's qualification under section 401(a), respondent should be precluded from raising that argument on brief. Respondent argues that petitioner was given fair notice of this issue, and that respondent should therefore be allowed to rely on the advance contributions argument. We agree with respondent for the reasons discussed below.

Respondent may rely on a particular theory if he has provided petitioner with "fair warning" of his intention to proceed under that theory. *Schuster's Express, Inc. v. Commissioner*, 66 T.C. 588, 593 (1976), affd. per curiam 562 F.2d 39 (2d Cir. 1977); *Rubin v. Commissioner*, 56 T.C. 1155, 1163 (1971), affd. 460 F.2d 1216 (2d Cir. 1972). Fair warning means that respondent's failure to give petitioner notice of his intention to rely on a particular theory in the statutory notice of deficiency, or the pleadings, must not have caused harm or prejudice to petitioner in petitioner's ability to prepare its case. *Schuster's Express v. Commissioner, supra* at 593-594; *Rubin v. Commissioner, supra* at 1163.

In *Rubin v. Commissioner, supra* at 1162-1164, the taxpayer argued that the Commissioner was precluded from relying upon section 482 because neither the notice of deficiency, nor the pleadings, set forth the Commissioner's intention to rely on that section. We rejected the taxpayer's argument, holding that the Commissioner had given the taxpayer fair warning because the Commissioner's representatives informed the taxpayer of the Commissioner's intention to rely on section 482 during a conference held well in advance of trial.

The taxpayer in *Schuster's Express, Inc. v. Commissioner, supra* at 593-594, argued that it was not given sufficient notice of the Commissioner's intention to rely on section 481 because this notice was not set forth in the notice of deficiency or the pleadings filed prior to trial. We held, however, that the taxpayer was given fair warning

because he was apprised of the Commissioner's intention several months prior to trial.

In the present case, petitioner was given notice of respondent's intention to rely upon his advance contributions argument with respect to the plan year ended January 31, 1977, several times prior to both the time the statutory notice of deficiency was sent to petitioner and the time the parties submitted this case fully stipulated. Respondent's 30-day letter, request for technical advice, and TAM[31] provided this notice. Moreover, the final adverse letter gave petitioner notice of respondent's intention to rely on the advance contributions argument for the plan year ended January 31, 1977, contemporaneously with the sending of the notice of deficiency by respondent and prior to the submission of this case. It is clear that petitioner was given fair warning, consistent with our holdings in *Rubin* and *Schuster's Express, Inc.*, of respondent's intention to rely upon the advance contributions argument with respect to the W.B. Co. Plan for the plan year ended January 31, 1977.

Petitioner quotes *Rollert Residuary Trust v. Commissioner*, 80 T.C. 619, 636 (1983), affd. on other issues 752 F.2d 1128 (6th Cir. 1985), where we stated that "[t]ime and time again this Court has reiterated that we will not consider issues not raised in the pleadings." In *Rollert Residuary Trust*, the taxpayer was precluded from raising his argument because it was raised for the first time on brief. In the present case, however, respondent raised his argument several times well in advance of the submission of this case as fully stipulated. Therefore, the language quoted from *Rollert Residuary Trust* is not controlling in the present case.

---

[31]The TAM statement of facts, for a reason not apparent to this Court, indicates that the merger of the B.B. & Co. Plan into the W.B. & Co. Plan was effected on Feb. 1, 1977, which would be during the plan year of the W.B. & Co. Plan ended Jan. 31, 1978. This fact is inconsistent with both the statement of facts attached to respondent's request for technical advice, and the stipulation of facts in the present case. The TAM concludes that the existence of the "surplus account" maintained by the B.B. & Co. Plan resulted in the B.B. & Co. Plan being disqualified for the plan year ended Jan. 31, 1977.

Our determination that the TAM gives further notice to petitioner of respondent's position regarding advance contributions is based upon a reading of the TAM in conjunction with both the 30-day letter and the request for technical advice. Moreover, as noted, according to the parties' stipulation of facts, it was the W.B. & Co. Plan, not the B.B. & Co. Plan, that held the excess funds attributable to advance contributions at the conclusion of the fiscal taxable year ended Jan. 31, 1977.

Petitioner also cites *Markwardt v. Commissioner*, 64 T.C. 989, 997 (1975), and *Estate of Mandels v. Commissioner*, 64 T.C. 61, 73 (1975), as support for his position. In *Markwardt v. Commissioner, supra*, the Commissioner argued that the taxpayer should be precluded from raising a casualty loss deduction argument under section 165(c)(3) because it was raised for the first time in the taxpayer's brief. We stated that the circumstances of the case showed that the taxpayer "never gave notice of such issue to the Commissioner."

In *Estate of Mandels v. Commissioner, supra* at 73, the Commissioner argued that the taxpayer should be precluded from arguing that a gift tax return was incorrect in listing gifts as being made during 1962, rather than during 1961, because the taxpayer raised the argument for the first time during the trial. We determined that we would not consider the taxpayer's argument because the issue raised was factual, and it was "clear from respondent's reaction at trial he was unaware of [the taxpayer's] position until the time of trial." *Estate of Mandels v. Commissioner, supra* at 73.

*Markwardt* and *Estate of Mandels* do not support petitioner's position in the present case because, as noted above, respondent gave petitioner notice of his intention to rely upon the advance contributions argument with respect to the W.B. Co. Plan several times prior to the submission of this case. Moreover, it is clear from a reading of the request for technical advice that petitioner had, in fact, responded to the advance contributions argument prior to the submission of this case. Petitioner, therefore, cannot now claim that it has been harmed in its ability to prepare its case.

In summary, we hold that respondent has provided petitioner with fair warning of his intention to rely upon the advance contributions argument with respect to the W.B. Co. Plan for the plan year ended January 31, 1977; petitioner has not been harmed or prejudiced in its ability to prepare its case due to respondent's failure to set forth that theory in the statutory notice of deficiency or the pleadings. To the contrary, petitioner should have anticipated that the argument would be raised in respondent's brief.

To reflect the foregoing,

*Decision will be entered under Rule 155.*